Horace O. Wetmore, Plaintiff-Appellee, v. The Ladies of Loretto, Wheaton, an Illinois Not-For-Profit Corporation, Defendant-Appellant.

Gen. No. 65–116.

Second District.

July 28, 1966.

Rehearing denied October 26, 1966.

McMahon & Plunkett, and Edward W. Nicewick, all of Chicago, for appellant.

Rathje, Woodward & Dyer Associates, and John S. Woodward, of Wheaton, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment entered by the trial court in which the issues on both the complaint and counterclaim were found in favor of the plaintiff, Horace O. Wetmore, and against the defendant, The Ladies of Loretto, Wheaton, an Illinois not-for-profit corporation. The nature and extent of the right of the defendant to use a certain roadway is the critical issue involved in this litigation.

Since 1928, the plaintiff, and his family before him, owned a tract of land near Wheaton, consisting of approximately 80 acres. The principal access to this tract

was by means of Hawthorne Lane, a roadway extending north from the easterly edge of the tract.

The plaintiff sold 10 acres of this tract to the defendant in 1946. These acres, located along the north edge of the larger tract, were carved out of its middle and were improved with a large mansion house, swimming pool, sunken gardens, and various outbuildings. The 10-acre parcel was landlocked, and the plaintiff granted to the defendant an express easement across the remainder of his tract to the east. This easement was over an existing driveway which ran in front of plaintiff's residence—to the east of the property sold to defendant—out to Hawthorne Lane, and then north, along Hawthorne Lane.

In 1957, representatives of the defendant approached the plaintiff, stating that it would like to open its own roadway west from its 10-acre tract, to Orchard Road. A portion of the land retained by the plaintiff, after his conveyance to the defendant, consisted of 40 acres west and south of the 10-acre tract which the defendant had purchased. The west line of this 40-acre tract was approximately 1,400 feet east of Orchard Road—a public road. The plaintiff, however, also owned a strip of land 33 feet wide, extending westerly from the west line of this 40-acre tract to Orchard Road.

Presumably, plaintiff could have sold that 33-foot strip to defendant, together with a strip of land 33 feet wide extending easterly therefrom over the 40-acre tract to the 10-acre tract. This would have given defendant its own road. However, the plaintiff told the defendant that he was not interested in selling just a roadway to the west out of the 10-acre tract but said that he might sell the entire 40-acre tract, including the 33-foot strip extending to Orchard Road. The defendant advised the plaintiff that if it could purchase the 33-foot strip of land, it would build a new road out to the west—which was in the opposite direction from plaintiff's residence and Hawthorne Lane.

457

At the time of the negotiations for the sale of the 40-acre tract, plaintiff attempted to get the defendant to give up its express easement appurtenant to the 10-acre tract—over the driveway in front of his house and over Hawthorne Lane. The defendant declined but said that as soon as its roadway to the west was built it would direct the bulk of its traffic over that road; and that, consequently, the driveway in front of the plaintiff's residence would receive less use. Apparently, this was satisfactory to the plaintiff, who prepared a memorandum dated October 28, 1957, in which he acknowledged that defendant wished to continue its easement on Hawthorne Lane and the driveway in front of his house. The 40-acre tract was then sold to defendant in 1957. No reference was made to any easement in the conveyance of the 40-acre tract.

The defendant built a road westerly to Orchard Road, which was called Loretto Lane. It ran through the 40-acre tract and across the 33-foot strip of land which the defendant purchased from the plaintiff. It was completed in June of 1960. Prior to that time, the relations between the plaintiff and the defendant had deteriorated. Throughout the 1950's, the defendant conducted a kindergarten and music classes on the 10-acre tract and the plaintiff became quite upset by the extent of the attendant use of the driveway and Hawthorne Lane, which totaled 40 to 50 vehicles daily, as well as limited use by pedestrians. On rare occasions the defendant also had picnics, garden parties and other parties which would result in additional traffic over Hawthorne Lane and in front of plaintiff's residence. All of these activities, however, were conducted on the 10 acres.

After the conveyance of the 40-acre parcel of land to the defendant, the plaintiff continued in his efforts to obtain defendant's release of the easement in front of his house. As early as 1958, he threatened suit if the

defendant would not give up its easement. After Loretto Lane was opened in June of 1960, the defendant made verbal requests and sent out maps and directions to those going to and from the convent, asking them to use Loretto Lane rather than Hawthorne Lane. Apparently, these efforts were quite successful in that the traffic over Hawthorne Lane, within a reasonable time after the construction of Loretto Lane, was reduced generally to about 5 cars per day.

The plaintiff, however, was not satisfied with the efforts of the defendant in this respect. He hired a deputy sheriff to turn back traffic going to the convent on Hawthorne Lane. This officer admonished such persons that they were trespassing on a private road. He also personally stopped vehicles on the Lane, told the drivers that they were trespassers, and directed them to turn around. Plaintiff also ejected pedestrians from the driveway in front of his house. At times his conduct was such that it obviously frightened the young people at the convent, as well as the Sisters. On one occasion, when the plaintiff came on defendant's property to object to the use of the Lane, one of the Sisters was compelled to call the sheriff to remove him. The plaintiff also installed a gate on the roadway which set off an alarm bell—both by the gate and in his house—when the gate was opened. There were numerous incidents and confrontations resulting from plaintiff's assertions that the defendant was without right to use or enjoy the easement previously expressly granted to it.

In 1962, the defendant began the construction of a House of Studies, part of which was on the original 10-acre tract purchased by the defendant and part on the 40-acre tract. The building was completed in August of 1963. It is one inseparable structure with the portion on the 10-acre tract being indivisible from the portion on the 40-acre tract. While this building is joined by a

passageway to the chapel, it is, however, separate, distinct and apart from the other structures on the 10-acre tract.

The completion of the House of Studies building was the catalyst which gave rise to this suit. Plaintiff's complaint alleges that upon the completion of this building located partly on the 10-acre tract and partly on the 40-acre tract, the easement granted for the benefit of the 10-acre tract was extended by the defendant to the 40-acre tract; that the entire installation (all of the buildings) of defendant on the two tracts are operated as a composite unit and cannot be segregated as to that use pertaining to the 40 and that use pertaining to the 10-acre tracts; and that defendant's use of the easement previously granted therefore, should be enjoined by reason of its extension to the 40-acre tract.

The defendant's answer stated that upon the conveyance of the 40-acre tract to it in 1957, there was created an implied easement benefiting this tract over the route previously granted by the express easement. It also denied that the use to which the 40-acre tract was put justified enjoining the use of the express easement appurtenant to the 10-acre tract. Other issues were raised which we will discuss later.

The trial court found that there was no implied easement upon conveyance of the 40-acre tract to the defendant; that defendant's use of the 10 and 40-acre tracts cannot be segregated; and that the express easement appurtenant to the 10-acre tract was thus abandoned and suspended by operation of law. The trial court enjoined any further use of Hawthorne Lane by the defendant until such time as the defendant's installation on the 10 and the 40-acre tracts shall be so altered or changed as to permit the use of Hawthorne Lane for the benefit of the 10-acre tract only, and not for the benefit of the 40-acre tract.

■ The essential elements of an easement by implication are: (1) The existence of a single tract of land so arranged that one portion of it derives a benefit from the other, the division thereof by a single owner into two or more parcels, and the separation of title; (2) before the separation occurs, the use must have been long, continued, obvious or manifest, to a degree which shows permanency; and (3) the use of the claimed easement must be essential to the beneficial enjoyment of the parcel to be benefitted. Sheehan v. Sagona, 13 Ill2d 341, 345, 148 NE2d 795 (1958); Gilbert v. Chicago Title & Trust Co., 7 Ill2d 496, 499, 131 NE2d 1 (1956).

■ The existence of these three requirements, absent any expression to the contrary, is sufficient to warrant the conclusion that the parties intended to include such an easement in the conveyance. "The doctrine of implied easements is based upon the principle that, in the absence of an expressed contrary agreement, a conveyance imparts a grant of property with all the benefits and burdens which existed at time of sale, and it is designed to give effect to the actual intent of the parties as shown by the facts and circumstances of a particular case." Frantz v. Collins, 21 Ill2d 446, 449, 173 NE2d 437 (1961).

We believe that the first two requirements are clearly present in this case. The plaintiff owned the entire 80-acre tract in 1946, and after the conveyance to the defendant of the 10-acre tract, still owned the 70-acre tract, which he severed in 1957. At the time of the conveyance of the 10-acre tract to the defendant in 1946, there was a well-defined roadway—extending from the north where the driveway was located—over which an express easement had been granted, within and along the east side of the 10-acre tract to its south edge, where a corner of the 40-acre tract adjoined.

■ This roadway extended to the groom's cottage located in the corner of the 40 acre tract. The road-

461

way was surfaced with some semipermanent material, was clearly visible, and had been long and continuously used. The defendant's 10-acre tract separated the 40-acre tract from the driveway in front of plaintiff's house and the balance of Hawthorne Lane. As a result, if we were to imply an easement, the dominant 40-acre tract would not be adjacent to the servient estate. However, such fact alone would not defeat an easement appurtenant. Beloit Foundry Co. v. Ryan, 28 Ill2d 379, 388, 192 NE2d 384 (1963) ; Allendorf v. Daily, 6 Ill2d 577, 588, 129 NE2d 673 (1955).

We do not believe, however, that the third requirement—that the easement be essential to the beneficial enjoyment of the land—is present. To satisfy this requirement, the claimed easement need not be really necessary for the enjoyment of the dominant estate, but it is sufficient if highly convenient and beneficial. Sheehan v. Sagona, supra, 347; Cosmopolitan Nat. Bank of Chicago v. Chicago Title & Trust Co., 7 Ill2d 471, 477, 131 NE2d 4 (1956) ; Gilbert v. Chicago Title & Trust Co., supra, 499, 500.

The determination of this requirement, of necessity, must turn on the particular facts present in each case. The deed, whereby the plaintiff conveyed the 40-acre tract to the defendant, also included the strip of land 33 feet in width which connected the 40-acre tract to a public road—Orchard Road. At that time, the 33-foot strip was not a roadway and was used only by farm vehicles in connection with the tilling of the land. However, the nature of the construction in connection with the means of access was immaterial. The strip of land afforded a reasonable alternative means of ingress and egress to the 40-acre tract. The easement, which defendant seeks to have us imply, was convenient to the use of the 40-acre tract, but at the time of the severance it was not so highly convenient that closing it would

seriously interfere with the beneficial enjoyment of the property. Fels v. Arends, 328 Ill 38, 45, 159 NE 244 (1927).

██ ██ Where alternate means of access to property are available without passing over the lands of another and the use of such means does not result in an unreasonable burden, courts should exercise due continence in implying and imposing a burden over the lands of another. The land conveyed to the defendant gave it direct access to a public road. Under such circumstances, an easement by implication was not sanctioned. Walker v. Witt, 4 Ill2d 16, 22, 122 NE2d 175 (1954). While we grant that from one point on defendant's property it was approximately 1.8 miles by Loretto Lane to the point to the north where Hawthorne Lane joins a public road and only 1 mile to this point by means of Hawthorne Lane, yet we do not believe that this imposes an unreasonable burden on the defendant in view of the fact that Loretto Lane provides correspondingly shorter and a much more convenient means of access from the other direction.

The case at bar is unlike those in which the denial of an easement over a common walkway would compel the person seeking the easement either to carry lawn equipment through his house, or use a very circuitous route to travel from the front of his yard to the back. Gilbert v. Chicago Title & Trust Co., supra. Likewise, this case is unlike those in which, at the time of severance of title, improvements had already been constructed on the premises in such a way that to compel one to use a proposed alternate means of access would result in an unwarranted burden. Sheehan v. Sagona, supra; Koubenec v. Moore, 399 Ill 620, 78 NE2d 234 (1948).

When all of the circumstances surrounding the sale of the 40-acre tract are examined—including its physical properties—we are convinced that to imply an easement over Hawthorne Lane for the benefit of the 40-acre tract

463

would not give effect to the actual intent of the parties. The defendant advised the plaintiff that it wanted its own road to the convent. It was this representation which gave rise to the subsequent sale of the 40 acres, which included the access strip of land to a public road. At the time of this conveyance, the plaintiff even sought to get the defendant to relinquish its express easement benefiting the 10-acre tract. The communications between the parties all negate the suggestion that they intended that the existing easement in favor of the defendant would be extended to the 40-acre tract. Further, the third fact criteria listed above as essential for the creation of an easement by implication is not satisfied. We thus hold that there is no implied easement over Hawthorne Lane and the driveway in front of plaintiff's home for the benefit of the 40-acre tract.

The plaintiff obtained an injunction preventing the continued use of the express easement appurtenant to the 10-acre tract by reason of its use for the benefit of the nondominant 40-acre tract. The defendant contends that not every extension of the use of an easement to an additional tract is a nuisance; and that it is only where the extension materially changes the burden on the servient estate, either as to the type of use or the amount, that there is a misuse.

We do not understand that to be the law. If an easement is appurtenant to one tract of land, any extension thereof to another tract of land is a misuse. Miller v. Weingart, 317 Ill 179, 183, 147 NE 804 (1925); D. M. Goodwillie Co. v. Commonwealth Elec. Co., 241 Ill 42, 81, 89 NE 272 (1909); Penn Bowling Recreation Center v. Hot Shoppes, 179 F2d 64, 66 (App DC 1949); Crimmins v. Gould, 149 Cal App2d 383, 308 P2d 786, 791 (1957); McCullough v. Broad Exchange Co., 101 App Div 566, 92 NYS 533, 536 (1905); 25 Am Jur2d, Easements and Licenses, § 77 p 483.

464

Conceding, that when the defendant constructed the House of Studies principally on the 10-acre but partly on the 40-acre tract the use of the easement for the benefit of this building constituted a misuse, the court is still confronted with the question of whether the remedy of injunction sought by the plaintiff and granted by the trial court, was proper. In all of the cases cited by the plaintiff, it was held that either an injunction was proper or that the easement was extinguished if it was impossible to sever or distinguish between the authorized and unauthorized use of the servient tenement. The majority of these cases pertained to the construction of a single, inseparable building, partly on the dominant and partly on the nondominant estate. The authorized and unauthorized use made of a roadway or easement for access to such building was quite understandably held to be indistinguishable.

Such is not the factual situation here. The House of Studies building, constructed partly on the 10-acre tract and partly on the 40-acre tract, is separate and distinct from the other buildings on the 10-acre tract. As to the use made of the chapel, mansion house, sunken gardens and other facilities on the 10-acre tract, access to these areas and the functions to take place thereon can be separated and distinguished from the functions to take place on the 40-acre tract relating to the House of Studies building. We find no factual justification for the finding that the entire installation of defendant on the 10 and 40-acre tracts cannot be segregated, or for the injunction prohibiting any use of Hawthorne Lane until such time as defendant's "Installation" be changed or altered.

Two other factors impress us in this respect. First, in the cases cited relative to extending the benefit of an easement to nondominant lands, the owner of the dominant tract was responsible for the extension of the burden

and the owner of the servient tenement had no connection or control over such an extension. The plaintiff here, however, was the one who conveyed the additional 40 acres to the defendant. He made this conveyance with full knowledge that the defendant intended to use the additional land for purposes other than as a roadway to the west, and that the defendant would not give up its existing easement benefiting the 10-acre tract. The plaintiff was not totally without command or control over the extension of the use of the easement.

Second, and most significant in this respect is the fact that prior to the construction of any facilities on the 40-acre tract or any use thereof, the vehicular traffic over the easement, solely for the benefit of the 10-acre tract, reached 40 to 50 cars per day, and there was also certain pedestrian use of the easement. On special occasions the traffic was greater. After the erection of the facilities on the 40-acre tract and after the construction of Loretto Lane over the 40-acre tract and the concerted efforts of defendant to direct traffic over this Lane rather than over Hawthorne Lane and the driveway in front of plaintiff's house, the traffic over Hawthorne Lane and the driveway was reduced to 4 to 5 cars per day. Yet, with knowledge of these facts, the plaintiff sought and invoked the equitable powers of the court to enjoin the defendant's limited use of such access way.

While the erection of the House of Studies building on part of the 40-acre tract results in a technical misuse of the easement granted appurtenant to the 10-acre tract, such trivial and inconsequential misuse neither justifies the issuance of an injunction restraining defendant's right to use the easement expressly granted, nor warrants the authorization granted to plaintiff to close Hawthorne Lane as a means of access to defendant's property. Beeman v. Pawelek, 96 NYS2d 204, 214 (Sup Ct 1949) ; 28 CJS, Easements, § 62, p 729; 25 Am Jur2d,

Easements and Licenses, § 107, p 511. A court of chancery will not require the doing or prohibition of an act where the benefit to be obtained does not warrant the hardship imposed. Beloit Foundry Co. v. Ryan, supra. Under the facts of this case, it would be unconscionable to enjoin the use of the easement granted to defendant in 1946.

The trial court denied defendant the actual and punitive damages sought in its counterclaim against the plaintiff. These damages were claimed to result from the conduct of the plaintiff in enforcing and asserting his supposed right to block off Hawthorne Lane to the defendant. Such conduct included his entering the land of defendant on numerous occasions, without invitation or authority to do so, to complain in rather forceful manners of the supposed trespasses by defendant.

Counsel for defendant claimed in the trial court that there was little actual damage, but a great deal of mental damage. The trial court found that there was no proof of actual damage, and we do not find that the corporate defendant and counter-plaintiff has suffered mental damage. However, we believe that the trial court should have awarded nominal damages to the defendant and counter-plaintiff for the trespasses of plaintiff.

As to the punitive damages claimed by defendant, such are not a favorite in the law. It is only where a wrongful act is accompanied by aggravating circumstances such as willfulness, wantonness, malice or oppression that such damages are recoverable. City of Chicago v. Shayne, 46 Ill App2d 33, 38, 196 NE2d 521 (1st Dist 1964) ; Skelly Oil Co. v. Universal Oil Products Co., 338 Ill App 79, 91, 92, 86 NE2d 875 (1st Dist 1949). The plaintiff's trespasses and actions were under a claim of right, albeit a mistaken claim. Under the circumstances it was not error for the trial court to find no malice and refuse to award punitive damages. Thompson

v. Evans, 49 Ill App 289, 291 (4th Dist 1892). Defendant is entitled, however, in view of plaintiff's past conduct, to an injunction sought in its counterclaim, restraining the plaintiff and his agents from wrongful entries upon defendant's property and from interfering with defendant's proper use of the express easement.

 We are also asked by defendant to decide the question of whether or not Hawthorne Lane is a public road. The parties agree that the northerly section thereof is a public road and that the portion thereof in front of plaintiff's house is a private road. It is the nature of the intervening section of Hawthorne Lane which we are asked to determine. Such decision is neither required, nor would it be propitious at this time, when all necessary parties for a conclusive determination of the question, are not before the court. LaSalle Nat. Bank v. City of Chicago, 3 Ill2d 375, 378, 379, 121 NE2d 486 (1954).

The decree is reversed and the cause is remanded to the trial court with directions to enter a decree in conformance with the views expressed herein and to take such further and other steps as may be necessary to implement such views.

Reversed and remanded.

MORAN, P. J. and ABRAHAMSON, J., concur.