Elijah Crawley and Nellie Smith, Plaintiffs-Appellees, v. Chicago Transit Authority, Defendant-Appellant.

Gen. No. 54,092.

First District.

August 21, 1970.

George J. Schaller, Jerome F. Dixon, and Paul Denvir, of Chicago, for appellant.

Hickey, Gustafson and Peterson, of Chicago (Edward Wolfe, of counsel), for appellees.

MORAN, P. J.

This is an action for damages for personal injuries received when the car which the plaintiff Elijah Crawley was driving and in which the plaintiff Nellie Smith was riding as his passenger was struck in the rear by defendant's bus. The case was tried in the Circuit Court of Cook County without a jury and the court awarded $5,740 to the plaintiff Elijah Crawley and $1,500 to the plaintiff Nellie Smith. Defendant appeals.

Richard Eldridge, a police officer for the City of Chicago, testified that he investigated the accident and when he asked Mr. O'Callahan, the driver of the bus, what had happened, O'Callahan answered "that he was westbound on Garfield Avenue (also known as 55th

Street) and that the vehicle in front of him stopped and he struck it in the rear." He testified that the car that was struck was within the crosswalk. He testified without objection that his report showed that the driver and his passenger claimed injury at the scene. On cross-examination he testified that Mr. O'Callahan told him that the automobile was stopped in front of him. Mr. Crawley told him that he was westbound and stopped for a traffic light. When he got to the scene of the accident, the vehicles had been moved, but he believed plaintiff's car was within the crosswalk, close to the east curb of State Street and not out into the street. He testified without objection that when he asked Mr. O'Callahan how far from the vehicle he was when he first observed it, that he replied that at the time he was in back of the other vehicle. He issued a summons for following too closely. He found some debris at the point of impact approximately one car length back from the east curb of State Street. He does not recall the extent of damage to either of the vehicles. On the day of the accident it was clear and the streets were dry.

Plaintiff Elijah Crawley testified that on May 6, 1965 as he was traveling west on 55th Street approaching the intersection of 55th and State Streets, the traffic light was red so he slowed up and stopped. When he had been stopped about five seconds he was hit in the rear by the C.T.A. bus. The rear end bumper and trunk of his car were damaged. On cross examination he testified that he was familiar with the intersection. He did not make a sudden stop at State Street. He first observed that the light was red approximately three or four car lengths from the light. At that time there was no vehicular traffic in front of him. He began slowing his car at that time. He never saw the bus prior to the collision. He looked in his rear view mirror, but did not see anything. His car moved approximately one-half car length as a result of the impact and his car stopped approximately

one-half car length west of the east curb of State Street. He went back to work the first week in June and missed several days periodically after that.

Nellie Smith testified that she was a passenger in Crawley's automobile at the time of the accident. She had been looking for a job, had been hired by "Wimpy's" and was scheduled to start work on the next day at $1.55 an hour. She was not able to begin work for three weeks, but at that time did go to work for Wimpy's at the same job she had been scheduled for. The car had been traveling west on 55th Street and was standing still for about five seconds when it was struck in the rear by the bus. On cross-examination she testified that she saw the light was red when the car was approximately one car length from the stoplight. The car had been stopped approximately five or six seconds when it was struck by the bus.

Matthew J. O'Callahan, first called as a witness by the plaintiffs under Section 60 of the Civil Practice Act, testified that he was the driver of the C.T.A. bus which was involved in an accident with plaintiff's automobile at about 3:20 p. m. on May 6, 1965 at Garfield and State Streets in Chicago. The point of impact of the vehicles was "the right front of my bumper (CTA bus) on the right of the left rear of his bumper, like sliding across." At the time of the collision plaintiff's automobile was standing still. A police officer arrived later but he does not believe that he asked how the accident happened. On direct examination he testified that the first time he saw the automobile it was moving, coming around him to his left at approximately 25 miles per hour. At that time his bus was also moving. Then he testified on behalf of the defendant that he had been employed by the Chicago Transit Authority for thirty-two years as a bus operator. On May 6, 1965 he had a high school charter from Mercy High School to approximately 45th and Emerald. He was

traveling west on 55th, which is four lanes westbound, north of the parkway. He was in the second lane from the north curb and was traveling about 20 miles per hour. He saw the car for the first time when it was in front of him. The traffic was moderate, but as he was proceeding in the block just east of State Street there was no traffic in front of him. When he was 60 to 65 feet from the intersection, plaintiff's automobile pulled from one of the left lanes in front of him. He put on all the brakes, including the hand brake, when the automobile came into the lane in which he was driving. The distance between the rear of the automobile and the front of the bus at that time was possibly 30 feet. After the accident he did not observe anything unusual about Elijah Crawley. He first observed that the signal light was green when he was behind the automobile, 60 to 70 feet from the intersection. He does not recall whether the light changed at any time before the collision. On cross examination he testified that the impact took place approximately four feet east of the building line and his bus was behind the automobile. When the vehicles stopped, the bumpers were together.

Defendant first contends that the trial court improperly refused to grant a recess or continuance for 20 minutes to permit defendant to produce a witness, because the defendant had informed the court that the witness would appear at 1:30. The court reconvened one-half hour early, but the witness did not appear. Defendant then informed the court that the witness was at another trial and would not appear until after 4:30. By 4:30 all other evidence had been heard and the court's findings had been made. The court refused to wait any longer for the witness, but permitted defendant to make an offer of proof.

■■■ On the basis of the record, we cannot say that the trial court abused its discretion in denying defendant's

motion for a recess since defendant had failed to subpoena the witness and had already been given a prior opportunity to produce the witness but failed to do so. Leathers v. Leathers, 13 Ill2d 348, 148 NE2d 773; Gray v. Gray, 6 Ill App2d 571, 128 NE2d 602; Keel v. Illinois Terminal R. R. Co., 346 Ill App 169, 104 NE2d 659.

■ Defendant next contends that the trial court erred in permitting the investigating police officer to testify to the conversation he had with the bus driver after the accident on the grounds that such testimony was hearsay and did not come within any exception to the hearsay rule. Assuming without deciding the merits of this contention, we believe there was other sufficient and competent evidence before the trial court sitting without a jury to support its findings. Under these circumstances it is presumed that only competent evidence was considered. McFail v. Braden, 19 Ill2d 108, 166 NE2d 46; Purcell v. Weasel, 12 Ill2d 356, 147 NE2d 580.

Finally, defendant contends that the damages awarded were grossly excessive and asks either for a new trial or for a remittitur in this court. Dr. Charles Lee Williams testified that he first saw Elijah Crawley after the accident on May 7, 1965 and continued to see him until August 18, 1966. The patient initially complained of pain in the neck, back, shoulders, and in his knees. His left knee was swollen and he also complained of nervousness and an inability to sleep for a night or two following the accident. The doctor found a 10% loss of cervical flexion and a muscle spasm in the neck area. He had an injury to the lower portion of his lumbo-sacral area and a swelling and discoloration of his left knee. X-rays were taken and the only positive finding was arthritis to C–5 and C–7 vertebrae. Dr. Williams recommended diathermy, bedrest and hospitalization. The injuries are the type which are continually painful. The patient was hospitalized from May 25, 1965 to June 2, 1965. Following his discharge from the hospital he received additional treat-

ment at Dr. Williams' office on approximately twenty-five occasions. Two-thirds of the hospital and doctor bill were attributable to the accident. The arthritic condition in the cervical area existed prior to the accident and the remaining injuries consisted of sprains and contusions which Dr. Williams would expect to improve over a period of time. He testified that it was difficult to differentiate between the cervical sprain and the arthritic condition, but that it was known that the sprain superimposed on arthritis, prolongs the symptoms of a sprain and arthritis aggravates them. He also made a diagnosis of posttraumatic neurosis which is a mental state that results from trauma, and was in his opinion "a big part of the disability." His prognosis in June, 1965, for the following six months or year was guarded. He had advised that the patient could return to work some time in June of 1965.

Elijah Crawley in testifying as to his injuries stated that following the accident he was hurt in his back, neck, legs and knees and was shaken up. On the day after the accident he did not make any complaint about his stomach, gall bladder or intestinal tract. These complaints came about after he had been hospitalized for a while. He was taken to Provident Hospital for a couple of hours and was given an injection. The next day he saw Dr. Williams and was under his care for approximately one year. During this time he felt much pain. Prior to the accident he had never had any trouble with his neck or any treatment for or trouble with his arthritic condition. He had to sleep with a towel around his neck for about four months. The pain in his knee and lower back has cleared up and he has trouble only with his neck. He also saw a Dr. Miller four or five times for heat treatments. He is presently working at the same job he had prior to the accident.

Dr. Roy Preston Garrett testified that he conducted an examination of Nellie Smith on May 7, 1965 following the

225

accident. He found that she was suffering from a strain of the cervical and lumbar regions and a contused chest. She was given a sedative for the pain and heat treatment and massage. She was under his treatment from May 7, 1965 until June 11, 1965. He testified that she has made a satisfactory recovery from the conditions which he diagnosed. She returned to work on May 17. His bill for these treatments was $113.

Nellie Smith testified that as a result of the accident she was unable to work for three weeks. When the bus hit the back of the car, her body was thrown backwards and forwards. Her neck was hurting. She was taken to Provident Hospital where she stayed approximately three hours. She was given some pain pills. She indicated that she felt pain in her chest and neck for approximately nine or ten months but after that time she felt all right.

Elijah Crawley's medical bill attributable to the accident was $355.52 and his hospital bill was $360.36. The trial court found that he lost three weeks of work at $125.00 per week. His special damages amounted to approximately $1,100. Nellie Smith's medical bill was $113.00. She lost three weeks of work at $1.55 per hour for a total of $301.55 in special damages. No testimony was introduced that any medical or hospital bill was unreasonable.

Defendant has suggested that these awards are excessive and are the result of prejudice and passion of the trial judge which is demonstrated in the statement made by the trial judge after his award to Nellie Smith of $1,500, that "women are such precious things. They get injured and in very peculiar ways when they get in an accident, you know. I always feel that they can be injured in a lot more ways than men can be injured. So I am going to give her $1,500." However, after a thorough reading of the transcript in this case and the findings as made by the court we are convinced that the trial judge

was objective and discerning in his evaluation of the evidence as it related to the issues of liability and damages and that he was not influenced by passion and prejudice.

■ We believe that the damages awarded by the trial court fall within the limits of fair and reasonable compensation. Sesterhenn v. Saxe, 88 Ill App2d 2, 232 NE2d 277; O'Keefe v. Lithocolor Press, Inc., 49 Ill App2d 123, 199 NE2d 60. Accordingly, the judgments of the Circuit Court of Cook County are affirmed.

Judgments affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.