Edward J. Sesterhenn, Jean Sesterhenn and John Sesterhenn, a Minor, by Edward J. Sesterhenn, His Father and Next Friend, Plaintiffs-Appellees, v. Ruth B. Saxe, Defendant-Appellant, and Arthur Bladowski, Defendant-Appellee.

Gen. No. 50,853.

First District, Third Division.

October 19, 1967.

Rehearing denied December 7, 1967.

Tom L. Yates and John T. Burke, of Chicago (J. L. Locke and Carl E. Abrahamson, of counsel), for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Francis B. Libbe and John M. O'Connor, Jr., of counsel), and Theodore L. Forsberg, of Chicago, for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a personal injury suit involving a number of automobiles, the jury returned verdicts for the plaintiffs and against the defendant Ruth Saxe in the sum of $8,000 for Jean Sesterhenn, $1,500 for Edward J. Sesterhenn and $10 for John Sesterhenn. Judgment was entered on

the verdicts. On a cross claim by defendant Saxe against defendant Bladowski, the jury returned no verdict, but the court entered judgment nevertheless in favor of Bladowski for reasons which we will later consider. An appeal was taken by defendant Saxe. The facts follow.

Plaintiff Jean Sesterhenn was driving an automobile in a northerly direction in the outside lane of a four-lane highway, Route 45, in Cook County. The posted speed limit was 65 miles an hour. Her husband Edward and her son John were with her. Defendant Ruth Saxe was driving her car in the opposite direction in the inside lane and undertook to pass a car driven by Laverne Davis. Approximately three car lengths ahead of the Davis car in the outside lane was a car driven by the other defendant Arthur Bladowski. It was raining and Bladowski swerved his car toward the inside lane to avoid splashing a Catholic nun who was standing alongside the road. This, it appears, caused Mrs. Saxe to apply her brakes. The pavement was wet and the Saxe car skidded out of control across the center line and into oncoming traffic, where it struck the Sesterhenn car. Conflicting evidence was presented at the trial regarding the relative positions of the vehicles, the speed of the Saxe car, and the distance Bladowski swerved to avoid splashing the pedestrian. The parties agree however that only two vehicles made contact.

Mrs. Saxe testified that she was going 40 miles an hour and that the front bumper of her car was even with the rear bumper of Bladowski's car when Bladowski swerved several feet across the line which divided his lane from hers. Laverne Davis, a witness called by Saxe, testified on cross-examination that he had no idea how fast he was traveling at the time of the accident and that he had no idea how fast the Saxe car was traveling. He admits however that he had made a written statement

5

shortly after the accident in which he estimated his speed at 55 to 60 miles an hour when Mrs. Saxe was passing him.

Defendant Saxe first contends that it was error for the court to allow a diagram which was not in evidence to be exhibited to the jury without showing the jury the writing beneath the diagram. Davis prepared the document about 3 weeks after the accident at the request of plaintiffs' attorney. In addition to answering the questions on the form, he sketched a diagram of the accident on the back of the report. The diagram and description are reproduced as follows:

A—My car [Davis' car]

B—Car of other witness
 [Bladowski's car]

C—Saxe car

D—Sesterhenn car

X—Catholic Sister

"Cars A & B were proceeding south toward Des Plaines, Car C was passing Car A and was about to pass Car B when Car B swung over his line to miss a Catholic sister standing in the road. Car C to

avoid hitting Car C [sic] cut her wheels to the left and apparently applied her brakes which threw her into a skid in front of approaching Car D."

At the trial Davis testified as to the facts; that he was driving in the outer lane two or three car lengths behind the Bladowski car when the accident occurred and that the Saxe car had passed his car and was passing the Bladowski car when Bladowski moved to his left and Mrs. Saxe applied her brakes. In an effort to impeach Davis's testimony as to the proximity of the Saxe car to the Bladowski car, counsel for Bladowski asked the witness to describe the diagram. The witness did so and admitted that in the diagram he placed the Saxe car next to his own about 3 car lengths behind Bladowski. There was no objection to this testimony and Davis was then excused. The matter did not arise again until the end of the trial when exhibits were being offered into evidence. At that time counsel for Bladowski offered the diagram that Davis had described, and the court refused to allow it in evidence. Counsel for Bladowski then asked the court if he could show the diagram to the jury since they had heard its contents. Counsel for Saxe objected unless the narrative was also shown. The court allowed the jury to see the diagram but not the narrative which was covered over. The court's reason for so doing was that the witness had previously testified to everything contained therein. We will first consider defendant Saxe's charge that this was error.

██ It is clear from the record that defendant Saxe passed Davis and was passing Bladowski when she lost control of her vehicle, swerved out of her lane and skidded across the center line and inside lane going the opposite direction into the outside lane where she struck plaintiffs' car. All this occurred in a matter of seconds. The vehicles were traveling at speeds somewhere in the range of 40 to 65 miles an hour and their locations relative to

each other were changing every instant. The ruling by the court could not have resulted in prejudice to the defendant Saxe. The narrative added nothing to the testimony of Davis and the diagram could act only as a limited aid to the jury from which they could discern the layout of the highway and the direction of the traffic. While it was error for the court to overrule defendant Saxe's objection to the showing of the diagram unless the whole of it was admitted into evidence, we consider the court's ruling to be harmless error. Kinsch v. Di Vito Const. Co. Inc., 54 Ill App2d 149, 203 NE2d 621, 626; Piechalak v. Liberty Trucking Co., 58 Ill App2d 289, 208 NE2d 379, 384; Adamaitis v. Hesser, 56 Ill App2d 349, 206 NE2d 311, 316.

Defendant Saxe's second contention is that the damages awarded plaintiff Jean Sesterhenn were grossly excessive and that a remittitur should be ordered. Mrs. Sesterhenn was awarded $8,000 although her special damages were only $84. There was ample testimony however upon which a jury could base a finding that her injuries were permanent in nature. A specialist in orthopedic medicine examined the plaintiff in the courtroom 7 years after the accident and testified that she was suffering from the residual effects of a whiplash injury sustained in the accident, that the flexion of her neck was restricted 15 degrees, that the condition was permanent and that there was no form of therapy to relieve the discomfort.

The test of the propriety of the amount of damages awarded is not the amount of out of pocket expense, but whether or not the amount of the verdict falls within the limits of fair and reasonable compensation. O'Keefe v. Lithocolor Press, Inc., 49 Ill App2d 123, 199 NE2d 60, 67; Myers v. Nelson, 42 Ill App2d 475, 192 NE2d 403, 406; Barango v. Hedstrom Coal Co., 12 Ill App2d 118, 138 NE2d 829, 838. The jury's verdict with respect to the amount of damages will not be disturbed

8

unless it appears that it was the result of prejudice or passion. Ford v. Friel, 330 Ill App 136, 70 NE2d 626; Healy v. Nordhous, 40 Ill App2d 320, 188 NE2d 227, 230. There is no merit in Saxe's second contention.

 Her third contention is that during closing arguments statements were made by plaintiffs' counsel which were outside the evidence and greatly prejudicial to the defendant. This contention is based on remarks made to the jury regarding the speed of the Saxe car and the fact that Mrs. Saxe was not sitting at the counsel table. In her motion for new trial, defendant Saxe did not specify with particularity the remarks regarding the speed of her car nor did she object to them at the time they were made. She is precluded from urging this as error on review. Ill Rev Stats, c 110, § 68.1(2) (1965). The objection made to comments as to where Mrs. Saxe was sitting during the trial is trivial. A jury trial has often been compared to the unfolding of a stage drama. Both require conformity with many technical rules and procedures, but there is one great difference. A stage drama is produced after a long period of rehearsal and after each actor has learned to play his part correctly. No provision is made for such preliminary preparation before a jury trial and it inevitably follows that in every such trial of any consequence there will be some error. Plaintiffs in the instant case were injured 10 years ago and have not yet received a final determination of their rights. A reviewing court should require a new trial only when it appears there was substantial error. Remarks regarding where Mrs. Saxe sat during the trial, whether at the counsel table or in the rear of the courtroom, can hardly warrant retrial of the case.

 Defendant Saxe's fourth contention is that the trial court erred in giving the following instruction over her objection:

9

"If you decide for the Plaintiffs on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate them for any of the following elements of damage proved by the evidence to have resulted from the negligence of the Defendants:

"The nature, extent and duration of the injury;

"The disability and disfigurement resulting from the injury;

" . . .

"The reasonable expense of necessary medical care, treatment and services received and the present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future.

" . . ."

Defendant contends there was no evidence of disfigurement or need for future medical treatment in the case of Jean Sesterhenn. The instruction was general in nature and was intended to instruct the jury with regard to compensation for injuries which might have been received by any of the plaintiffs. Plaintiff Edward Sesterhenn was disfigured, thus making that portion of the instruction appropriate. As to the evidence of need for further medical treatment, a physician testified that physical therapy and medication might be necessary for temporary relief from pain. This is adequate to support this portion of the instruction.

Defendant Saxe also charges error in the failure of the trial court to give an instruction defining "cash value" which is referred to in the instruction on damages. She did not tender such an instruction to the trial judge

and therefore cannot raise the failure to give the instruction as error here. Ill Rev Stats, c 110, § 67(3) (1965).

The fifth contention made by defendant Saxe is that the trial court erred in entering judgment for defendant Bladowski on the cross claim after the jury returned both forms of verdict blank. Where, in a multiple-action trial, the jury returns a verdict on one action or claim that is silent as to the other actions submitted to them, the court will, if the manifest intention of the jury is sufficiently certain, make the verdict conform to that intention and carry their findings into effect as to the other action. Kinney v. Kraml Dairy, Inc., 20 Ill App2d 531, 156 NE2d 623, 628. In that case the jury had returned a verdict against three defendants, but failed to return any verdicts in a cross claim between the defendants. The trial judge entered judgment for the cross-defendants and this court upheld his action, stating it was implicit in the verdict that the jury was also finding the cross-defendants not guilty. In the instant case the issue of culpability for the accident was decided by the jury in favor of the Sesterhenns and against Mrs. Saxe *only*. Implicit in the verdict was a finding that Mrs. Saxe was negligent and that Bladowski was not. Because of the complexity of this case—eighteen verdict forms were submitted to the jury—it is not difficult to understand how the jury neglected to complete a verdict form for the cross claim. A finding of not guilty as to Bladowski on the cross claim is the only finding consistent with the verdict the jury returned. It was therefore proper for the court to enter judgment without resubmission to the jury.

The last point made by defendant Saxe is that the court erred in refusing to allow the witness Davis to testify that he had made a prior written statement consistent with the testimony he gave on direct examina-

11

tion. She contends that after Davis was questioned on cross-examination regarding his meeting the previous day with Mrs. Saxe's attorney, Davis should have been allowed to testify that he had previously made a written statement which was consistent with his testimony given on direct examination. The well settled rule is that prior consistent statements are not admissible to corroborate a witness's testimony even after he has been impeached. Schmitt v. Chicago Transit Authority, 34 Ill App2d 67, 179 NE2d 839, 841. In support of her contention to the contrary the defendant Saxe cites Gates v. People, 14 Ill 433. In that case the court held that to contradict evidence tending to show that a witness's account of a transaction was a fabrication of recent date, it may be shown that he gave a similar account prior to that time. Corroborative testimony is allowed in such a case as an exception to the general rule because it negates the possibility that the witness might have recently changed his testimony and it thus has an element of rehabilitation in it. The cross-examination in the instant case was directed toward showing Davis's possible bias and not toward establishing that his testimony was a recent fabrication. We conclude that the trial judge ruled correctly in not allowing the prior consistent statements of Davis to be admitted to corroborate his testimony.

We find no reversible error in this record.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.