Dale S. RICE, Plaintiff–Appellee, Cross–Appellant,

v.

NOVA BIOMEDICAL CORPORATION and Robert Christopher, Defendants–Appellants, Cross–Appellees.

Nos. 93–1831, 93–2018 and 93–2685.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1994.

Decided Oct. 25, 1994.

Rehearing Denied Jan. 5, 1995.

Lawrence R. Levin (argued), Marc W. O'Brien, Jonathan Vegosen, Damon E. Dunn,

Vance L. Liebman, Levin & Funkhouser, Chicago, IL, for Dale S. Rice.

J. Stephen Poor, Marcia A. Mahoney, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Robert W. Harrington (argued), Boston, MA, for Nova Biomedical Corp. and Robert Christopher.

Before POSNER, Chief Judge, and WELLFORD * and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

In 1981 Nova Biomedical Corporation, a manufacturer of medical instruments, hired Dale Rice as a field service representative, installing and servicing Nova equipment in three midwestern states. He was later promoted to regional technical specialist, supervising field service representatives all over the country. He worked out of his home in Illinois. His boss was Robert Christopher, Nova's director of technical services, who works at Nova's headquarters in Massachusetts. Christopher fired Rice—an employee at will—in 1989, ostensibly because Rice had disobeyed instructions, missed service calls, and mismanaged the inventory of parts for Nova equipment that Rice stored in his garage. Rice responded the following year with this diversity suit. The complaint charged Nova and Christopher with defamation and with retaliatory discharge for Rice's having filed workers'. compensation claims, and Christopher with intentional interference with advantageous business relations. Four months after being fired, Rice obtained a higher-paying job and later became the president of a company at a still higher salary. (We were told at argument that he has become unemployed since the trial.) Nevertheless the jury awarded $10,000 in actual and $50,000 in punitive damages against Nova, and $40,000 in punitive damages against Christopher, for a total of $100,000. The jury rendered a verdict for both defendants on the retaliatory-discharge count, however.

This is rather a poor excuse for a lawsuit. At the time of trial, Mr. Rice had improved his economic position by being fired. The defendants were allowed, all unavailingly, to

* Hon. Harry W. Wellford of the Sixth Circuit.

argue to the jury that Rice's serendipitous gains from being fired should be offset against the loss of income that he incurred during his brief period of unemployment. It is true that this argument, despite its appeal to common sense, was not relevant to damages, and in fact the evidence on which it was based was admitted only to rebut evidence that Rice had experienced a loss of self-esteem as a result of being fired. He could not have recovered for losses that, though they would not have occurred but for the discharge, were not the sort of loss made more likely by it, *Brackett v. Peters*, 11 F.3d 78, 79 (7th Cir.1993); *DeShaney v. Winnebago County Dept. of Social Services*, 812 F.2d 298, 302 (7th Cir.1987), aff'd, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); it would be as if he had been injured as a result of slipping on a banana peel on his way from the meeting at which Christopher fired him. It follows that he should not be denied serendipitous gains—gains that while they would not have accrued had it not been for the discharge were not made more likely by it. Otherwise tort damages would be systematically underestimated. Still, having suffered in fact, if not in the contemplation of law, no pecuniary injury from being discharged (and presumably only a transient diminution in self-esteem), Rice might have been expected to use his time to better advantage than litigating. The suit is four years old and after paying his lawyers Rice is unlikely to have obtained a compensatory rate of return on the investment of time and emotion that he must have made in the suit. It is not only his own time and emotional tranquillity that he has spent bounteously. Beset by swollen dockets, judges cannot be expected to look with favor upon lawsuits brought not to recoup losses but to vent indignation or generate windfall gains.

Besides not being hurt, at least in any very palpable sense, by the defendants' alleged wrongdoing, Rice was skating on the thinnest of legal ice in bringing this suit; the expected as distinct from the realized value of suing must have been meager indeed. He had no employment contract, so could not complain about being fired as such. He tried three end runs. Oddly, the most plausible—retaliatory discharge—failed, and the other two, which are not plausible, succeeded. The first of the implausible claims—that his discharge constituted a tortious interference with advantageous business relations—is perhaps better described merely as peculiar, since it is not questioned by the defendants or barren of support in case law. See, e.g., *Mittelman v. Witous*, 135 Ill.2d 220, 142 Ill.Dec. 232, 235–36, 246, 552 N.E.2d 973, 976–77, 987 (1989). Still, it makes little sense in a case such as this where the employer is not complaining of having been tortiously deprived of the plaintiff's services. The theory of the tortious-interference claim is that Christopher improperly interfered with Rice's relations with Christopher's own employer, Nova. Were this plausible, one might expect Nova to be a coplaintiff rather than a codefendant, indignant at its employee's disloyal act in procuring the discharge of a fellow employee on entirely personal grounds, and wanting to place as much distance as possible between itself and Christopher to avoid the imposition of derivative liability on it for his wrongdoing. That is not Nova's tack at all. Nova is not complaining that Rice has left its employ. It is content with the discharge. It has indeed ratified Christopher's act in firing Rice, making it its own act, and as an employer at will it could fire Rice on any non-privileged ground, even one as perverse as another employee's animosity to him.

Rice's other successful end run around the doctrine of employment at will was to charge defamation. Yet the only significant harm that he can have suffered from defamation arises from the fact that Rice himself disclosed to prospective employers the ostensible grounds of his discharge, grounds that because they disparaged his professional competence were, once made known to other people, defamatory per se under Illinois law. *Id.* at 241, 552 N.E.2d at 982; *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 267–69 (7th Cir.1983). He was as it were his own defamer, but was able to turn this curious posture for the plaintiff in a defamation case to his advantage by invoking the doctrine of "compelled republication," or as it is sometimes called (underscoring its absurdity, as it seems to us) self-defamation. Prospective employers asked Rice why he

had been fired; honesty required him to divulge Nova's stated grounds even if (even though) false. *Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876, 886–88 (Minn.1986), and cases cited there. The combination of the doctrines of defamation per se and self-defamation gives employees who regret not having negotiated an employment contract a tort surrogate for it. But not in Illinois, where the only case to address the doctrine of compelled self-defamation noted that it is a minority view and rejected it, *Layne v. Builders Plumbing Supply Co.,* 210 Ill.App.3d 966, 155 Ill.Dec. 493, 499–500, 569 N.E.2d 1104, 1110–11 (1991)—as the defendants' lawyer failed to inform the district court. Since it is a minority view, and a very questionable one—it makes it impossible for an employer to communicate his grounds for discharging an employee to the employee even confidentially without incurring a grave risk of being sued for defamation—we believe it unlikely that the Supreme Court of Illinois would take a different view from the intermediate appellate court in *Layne.* Without the doctrine of self-defamation Rice could not show that he suffered significant harm from the defamation, although, because it is a case of defamation per se, he could still obtain an award of general damages. *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill.2d 1, 180 Ill.Dec. 307, 312, 607 N.E.2d 201, 206 (1992); *Girsberger v. Kresz,* 261 Ill.App.3d 398, 198 Ill.Dec. 940, 952, 633 N.E.2d 781, 793 (1993); *Brown & Williamson Tobacco Corp. v. Jacobson, supra,* 713 F.2d at 268. But the point has been waived.

■ The defendants base their attack on the judgment on other and less promising grounds. The first, which is limited to Christopher, is that the district court did not obtain personal jurisdiction over him under Illinois' long-arm statute, because of the "fiduciary shield" doctrine. This doctrine, recognized by the courts of many states including Illinois—though also much criticized and by many jurisdictions rejected, see, e.g., *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199–202, 522 N.E.2d 40, 44–47 (1988); *Columbia Briargate Co. v. First National Bank,* 713 F.2d 1052, 1055–77 (4th Cir.1983); Robert A. Koenig, Comment, "Personal Jurisdiction and the Corporate Employee: Minimum Contacts Meet the Fiduciary Shield," 38 *Stan.L.Rev.* 813 (1986)—denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal. *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 395–400, 565 N.E.2d 1302, 1313–18 (1990); *People ex rel. Hartigan v. Kennedy,* 215 Ill.App.3d 880, 159 Ill.Dec. 438, 445–46, 576 N.E.2d 107, 114–15 (1991). So a policeman sent into a state to serve an arrest warrant cannot be sued there for false arrest, although his superiors, who sent him, can be by virtue of his having come into the state on their business. That was *Rollins.* If Christopher's action in coming into Illinois to fire and defame Rice was done solely on behalf of Nova, he is under the fiduciary shield and this regardless of whether he exercised discretion rather than merely carrying out precise orders mechanically. The *Kennedy* case shielded directors of a charitable organization under the doctrine. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir.1981), is a similar case, although it is an impaired precedent because it was an interpretation of New York law and New York's highest court later repudiated the entire doctrine in the *Kreutter* case.

■ The shield is withdrawn if the agent was acting also or instead on his own behalf—to "serve his personal interests," *Rollins v. Ellwood, supra,* 152 Ill.Dec. at 400, 565 N.E.2d at 1318. The interests, we may assume, need not be pecuniary. We can find no cases from any jurisdiction discussing this issue but can think of no reason why the exception for personal interests should be limited to pecuniary ones. Surely if the policeman in *Rollins* had because of some purely personal enmity murdered the person whom he served the arrest warrant on, he would not have been allowed to set up the fiduciary-shield doctrine as a defense to a suit for wrongful death in Illinois.

■ The record contains no evidence that Christopher in firing Rice was on a frolic of his own. He may have disliked Rice but if the policeman in *Rollins* had happened to dislike the person on whom he served the

arrest warrant he would not have lost his fiduciary shield against a suit for false arrest. Unlike our murder hypothetical, the dislike would not have created or exacerbated the harm to the person, which on the present assumption came from the arrest alone. No "personal interests" that might have induced Christopher to fire Rice regardless of Nova's interests, or even Christopher's conception of Nova's interests, have been identified. It is not as if Rice and Christopher had had some relationship outside their business one, or as if Christopher had been trying to harm Nova and line his own pocket, or as if the two men had been competing for the same promotion, or as if Christopher had wanted Rice's job for his nephew. Had Christopher been on a frolic of his own, moreover, Nova would not, or at least should not, have been found liable by the jury. Intentional torts do not fall within the scope of the doctrine of respondeat superior unless the employee or agent is acting in furtherance (however misguidedly) of his principal's business. *Gregor v. Kleiser,* 111 Ill.App.3d 333, 67 Ill.Dec. 38, 42, 443 N.E.2d 1162, 1166 (1982); *Illinois Founders Ins. Co. v. Smith,* 231 Ill.App.3d 269, 172 Ill.Dec. 780, 785, 596 N.E.2d 59, 64 (1992).

It is true that a dictum in *Reed v. Northwestern Publishing Co.,* 124 Ill.2d 495, 125 Ill.Dec. 316, 326, 530 N.E.2d 474, 484 (1988), another defamation case, speaks of "scope," not "furtherance," of employment, the formula used in accident cases. But the precise wording could not matter in a case like this, since if Christopher in firing Rice was pursuing some purely private vendetta Nova would not be liable under any reasonable conception of respondeat superior. At all events, the defamation count is not involved in the fiduciary-shield issue, not directly anyway, for it is only with respect to the intentional-interference count that the district court held that Christopher was *not* entitled to the protection of the doctrine. 763 F.Supp. 961, 964–66 (N.D.Ill.1991). Having thus established jurisdiction over Christopher on that count, the court exercised jurisdiction over him on the remaining counts in accordance with the *doctrine of pendent personal jurisdiction.* That doctrine has heretofore been applied only to cases in which personal jurisdiction of one claim was based on a federal statute authorizing nationwide service of process. *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056–57 (2d Cir.1993); *Oetiker v. Jurid Werke, G.m.b.H.,* 556 F.2d 1, 4–5 (D.C.Cir.1977). But the defendants do not question the district court's extension of the principle to this case, so we need not discuss it, beyond observing that the court's action should probably be viewed as an interpretation of Illinois' long-arm statute rather than as some free-standing federal common law doctrine. This is an aside; the point is only that even if *Reed* made the scope of agency in defamation cases broader than in cases involving other intentional torts, this would not help Christopher, who had already succeeded in interposing the fiduciary shield against the defamation count.

■ A further wrinkle might seem to place Christopher firmly under the shield. Illinois does not make the principal automatically liable for punitive damages assessed against the agent even if the latter was acting in furtherance of the principal's business. It requires that the principal's complicity in the tortious conduct giving rise to the assessment be shown. *Douglass v. Hustler Magazine, Inc.,* 769 F.2d 1128, 1145–46 (7th Cir. 1985); *Kemner v. Monsanto Co.,* 217 Ill. App.3d 188, 160 Ill.Dec. 192, 198–205, 576 N.E.2d 1146, 1152–59 (1991). The jury, therefore, should not have awarded punitive damages against Nova if it thought Christopher was acting without reference to Nova's interests. It did award punitive damages against Nova, implying—one might think—that Christopher must have been acting on Nova's behalf after all, and therefore was not serving any personal interests. More precisely, his personal interests, like the policeman's hypothetical enmity, had no consequence; Rice would have been fired anyway. But the jury was not instructed in accordance with the *complicity doctrine.* Once again the defendants' lawyer appears to have dropped the ball, this time by permitting the jury to award punitive damages against Nova without having to find wrongdoing on Nova's part. So no inference can be drawn from the award of punitive damages against Nova that the jury thought Christopher was *not* on a frolic in firing and defaming Rice.

And yet Christopher probably *was* entitled, prima facie at least, to the protection of the fiduciary-shield doctrine because, so far as the record of the trial reveals, he was not in fact in Illinois to serve his personal interests. We say "prima facie" because the doctrine is usually said to be discretionary or "equitable," rather than absolute, an entitlement. *Burnhope v. National Mortgage Equity Corp.*, 208 Ill.App.3d 426, 153 Ill.Dec. 398, 567 N.E.2d 356, 363–64 (1990). But neither party makes anything of the point. For all that, however, Christopher booted his opportunity to establish the applicability of the doctrine in the district court, and it is now too late. When he moved to dismiss the suit against him for want of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), there was no record bearing on personal jurisdiction other than the complaint itself, because Christopher did not attempt to submit evidence, in the form of affidavits or otherwise, in support of the motion. Nor did he request an evidentiary hearing or other opportunity to present evidence. He was thus reduced to arguing that the complaint failed to *allege* that Christopher had been acting other than for the exclusive benefit of Nova. But when the complaint is interpreted generously to the plaintiff, as the principles of federal pleading require, it adequately alleges that Christopher was acting for his personal benefit. It alleges that Christopher in pursuit of his own goal of retaliating against Rice caused Nova to fire a loyal and competent employee.

■ The complaint did not, it is true, specify the personal motive for Christopher's actions; did not explain what might have led Christopher, other than loyalty, however misplaced, to his employer, to fire a subordinate for filing a worker's compensation claim. But such an omission is not critical in a regime of notice pleading, even with respect to jurisdictional allegations. Fed.R.Civ.P. 8(a)(1); *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 777 (7th Cir.1994). What may be critical is that the existence of any personal motive for Christopher's conduct toward Rice was cast into grave doubt by the jury's rejection of the retaliatory-discharge claim after the evidence presented at trial failed to show what "personal interests" or for that matter corporate interests Christopher might have been serving. The cases say, perhaps too casually, that by the end of the trial the plaintiff must have proved that the court has personal jurisdiction over the defendant. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989); *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir.1988); *Marine Midland Bank, N.A. v. Miller, supra*, 664 F.2d at 904; *Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir.1978); cf. *Watlow Electric Mfg. Co. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir.1988); *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992). If these statements are taken literally, Christopher wins. They should not be taken literally. To begin with, they are in tension with the rule that the defendant must challenge personal jurisdiction at the earliest opportunity, on pain of forfeiture if he fails to do so. Fed.R.Civ.P. 12(h)(1). Such challenges should be resolved before rather than after trial in order to head off situations in which a defendant, if he thinks the trial is going against him, will plead lack of jurisdiction in order to force the plaintiff to start over in another court, but if he thinks the trial is going well will waive his objection to personal jurisdiction and await the entry of a final judgment that he can use as res judicata to prevent the plaintiff from suing him again.

It would defeat the purpose of requiring prompt assertion of the defense of lack of personal jurisdiction if the defendant, having raised an objection to personal jurisdiction at the outset as required, could without any penalty fail or refuse to press it, creating the impression that he had abandoned it, and not seek to correct that impression until he appealed from an adverse final judgment on the merits. We do not understand the cases that we have cited to condone such a tactic; and we condemned it in *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir.1993), though we did so not under Rule 12(h)(1), which concerns only pleading, but under the doctrine of waiver, which is applicable to all defenses except lack of subject-matter jurisdiction.

■ All that the cases we cited earlier mean is that the denial of a preliminary

challenge to personal jurisdiction, like the denial of a preliminary injunction, is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial. See also *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *Welinksy v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir.1988). Certainly if it is infeasible or inconvenient to make a definitive determination of personal jurisdiction on the basis of affidavits or other evidence presented in a pretrial hearing, the district judge can, as with other preliminary questions, defer resolution to the trial. *Serras v. First Tennessee Bank Nat'l Ass'n*, supra, 875 F.2d at 1215; *Stauffacher v. Bennett*, 969 F.2d 455, 459–60 (7th Cir.1992). Presumably he can let the matter ride to trial even if a definitive determination could be made earlier, although normally the better practice is to decide dispositive threshold issues at the outset and spare the parties the burden of a trial.

■ But ours is a case of waiver. Christopher did not ask the district court to base its determination of the applicability of the fiduciary-shield doctrine on the evidence that would be presented at trial concerning his motives in firing Rice. He did not ask the court to base its determination on affidavits submitted for and against the motion to dismiss for want of personal jurisdiction. As we have mentioned, no such affidavits were submitted. Invited by the court to renew the motion to dismiss for want of personal jurisdiction should discovery turn up material relevant to the fiduciary shield, 763 F.Supp. at 966, Christopher declined the invitation, or at least never took it up. He did not use the ample tools of pretrial discovery to try to get a better idea of what personal interests of his might in Rice's view have led to the discharge and defamation. He did not present evidence that he had no personal motive. He did not renew his challenge to personal jurisdiction during or after trial. All he ever sought—or so at least his actions and inactions, statements and silences, implied until he got to this court—was a ruling by the district court on the pleadings. He got the ruling. And the ruling was right: the pleadings sufficiently if not amply alleged personal jurisdiction.

■ The next question is whether Massachusetts or Illinois law applies under the conflict of laws rules of Illinois, which control in this diversity suit since the suit was brought in Illinois. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). (A basic point, but worth repeating, because some lawyers in this circuit labor under the erroneous impression that the law of the forum state automatically furnishes the rules of decision in a diversity suit. It does so only if the forum state's conflict of laws rules so decree.) The significance of the choice-of-law question lies in the fact that Massachusetts does not allow the award of punitive damages unless expressly authorized by statute, *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 575 N.E.2d 1107, 1112 (1991), an exception conceded to be inapplicable here. The traditional choice-of-law rule for tort cases was that the law of the state in which the tort occurred would apply. *Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1057 (7th Cir.1987). And while under current Illinois law "the place of the accident retains presumptive weight in a tort case, but the presumption is easily overcome," *id.* at 1058, we can think of nothing that might overcome it in this case. The plaintiff is a resident of the place that he contends is the place where the tort occurred. The suit was brought there. And no circumstances are suggested that might—as in *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970), where both parties were residents of the state in which the suit was brought, although the accident had occurred elsewhere—make another state's law more apposite even if the tort did not occur in that other state. See *Walters v. Maren Engineering Corp.*, 246 Ill.App.3d 1084, 186 Ill.Dec. 931, 935, 617 N.E.2d 170, 174 (1993). So let us consider whether the presumption is applicable, that is, whether the tort occurred in Illinois rather than in Massachusetts; for in the absence of rebuttal, and there is none, this will determine which state's law applies.

■ A tort is not complete until the victim is injured. *Stromberger v. 3M Co.*, 990

F.2d 974, 976 (7th Cir.1993). It might seem therefore that the state of injury must be the state in which the tort occurs. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd.,* 34 F.3d 410, 412 (7th Cir. 1994). The tort of defamation would therefore occur in the state or states in which the victim loses personal or as here professional transactions or transactional opportunities because of the impairment of his reputation brought about by the defamatory statement. Ordinarily this will be the state in which the statement was published and thus disseminated to potential transactors with the victim of the defamation. *Jean v. Dugan,* 20 F.3d 255, 261 (7th Cir.1994); *International Administrators, Inc. v. Life Ins. Co.,* 753 F.2d 1373, 1376–77 n. 4 (7th Cir.1985). So far as appears, the injury to Rice (if any) from the defamation occurred in Illinois, where Rice sought and eventually obtained employment after being fired by Nova. He testified, it is true, that he sought it elsewhere as well. But since he lives in Illinois, presumably his job search was concentrated there; some evidence of this is that he found his new job there. Remember that this is a self-defamation case. Rice published the defamation to the prospective employers who interviewed him, mainly in Illinois. That is where, or one of the places where, he was hurt. So the tort occurred there.

Too neat, alas. The approach we have been describing to determining the site of a tort is the approach taken when the question is personal jurisdiction. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961); *Longo v. AAA–Michigan,* 201 Ill.App.3d 543, 155 Ill.Dec. 450, 455, 569 N.E.2d 927, 932 (1990). Consistent with the highly particularistic, "all relevant factors" (called "contacts" in the jargon of conflict of laws) approach of modern conflicts law, when the issue is which state's law shall apply, the place of the wrongful conduct and the place of the injury are treated as separate "contacts" between the lawsuit and the states in question. E.g., *Walters v. Maren Engineering Corp., supra,* 186 Ill.Dec. at 934, 617 N.E.2d at 173. As a result, when the places are different the presumption that the law of

the place of "the tort" applies cannot be used; the tort has no place; instead it has contacts, presumably offsetting, with at least two states. If defamatory statements are uttered in Massachusetts, and the plaintiff is hurt in Illinois, neither state is the place of the tort.

We would thus be at a loss as to how to decide the conflicts of law question except for the fortuity that while the defendants' alleged plot against Rice was hatched in Massachusetts, most of the defamatory statements of which he complains were made to him in a personal meeting in Illinois and, as we have noted, "republished" by him there. This means that he was defamed in Illinois as well as injured there (treating these as distinct "contacts" with the state), and as he is a resident of Illinois there is no reason not to apply the place-of-the-tort presumption ("lex loci delicti," in the vanished jargon of premodern conflicts law). So Illinois law applies, and Rice was not barred from seeking punitive damages. There is a shorter path to this conclusion: throwing up their hands in despair at the inoperability of modern conflicts laws, the Illinois cases say that in a multistate defamation case (which this is, because Rice defamed himself in every state in which he sought a job) the applicable law is that of the victim's domicile, period. E.g., *Velle Transcendental Research Ass'n, Inc. v. Esquire, Inc.,* 41 Ill.App.3d 799, 354 N.E.2d 622, 625 (1976).

■ Next the defendants argue that there was no evidence of "malice," without which punitive damages cannot be awarded in a suit for defamation. In using "malice" without a modifier they evince a lack of understanding of the use or rather uses of the word in defamation cases. Under the rule of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), a plaintiff who is a public figure cannot obtain a judgment for defamation unless he shows that the defendant either knew that the statement was false or was indifferent to whether it was true or false. This is the requirement of "actual malice." The *Sullivan* case itself has no application here, because the plaintiff is not a public figure. But a later case, *Gertz v. Robert Welch, Inc.,* 418

U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974), holds that punitive damages cannot be awarded in a suit for defamation even when the suit is brought by a nonpublic figure unless there is proof of actual malice. See also *Brown & Williamson Tobacco Corp. v. Jacobson, supra,* 713 F.2d at 273. There was enough evidence of it here to sustain the jury's verdict.

Malice in another and more colloquial sense—the sense of something being done solely to harm the person defamed—"express malice," as it is called, see *id.* at 272—forfeits various privileges, including the privilege here arguably available to the defendants but not invoked by them for character references and internal corporate communications. *Delloma v. Consolidation Coal Co.,* 996 F.2d 168, 171 (7th Cir.1993) (applying Illinois law); *Babb v. Minder,* 806 F.2d 749, 753–55 (7th Cir.1986) (same). Whether actual malice in the *Sullivan* sense might also forfeit some of these privileges under Illinois law was described as an open question in *Brown & Williamson Tobacco Corp. v. Jacobson, supra,* 713 F.2d at 272–73, but it has since become reasonably clear that the answer is yes. See *Mittelman v. Witous, supra,* 142 Ill.Dec. at 245, 552 N.E.2d at 986; *Babb v. Minder, supra,* 806 F.2d at 755. There was some evidence of both express and actual malice, so the defendants' denial of "malice" in some undifferentiated sense fails.

■ Next and with greatest vigor the defendants argue that the jury's verdict is hopelessly inconsistent because it awarded punitive damages against Christopher but no actual damages. Since a tort requires injury, the jury's finding that Christopher had caused no compensable harm to Rice implies that Christopher was not guilty of a tort. Since Nova's liability was derivative from Christopher's, Nova could not have committed a tort either.

All this is literally true, though in a defamation per se case the "injury" can be pretty invisible; remember that the jury in such a case is permitted to award general damages even if there are no actual damages, no demonstrable monetizable loss. But that refinement to one side, if the nature of the jury's mistake is reasonably discernible and can be corrected without destroying the integrity of the verdict—without, that is to say, giving the parties a judgment different from what the jury intended—the verdict will stand. *EEOC v. Century Broadcasting Corp.,* 957 F.2d 1446, 1460 (7th Cir.1992); *Burlew v. Eaton Corp.,* 869 F.2d 1063, 1068 (7th Cir.1989); *Stuckey v. Northern Propane Gas Co.,* 874 F.2d 1563, 1573–74 (11th Cir. 1989); *G.A. Thompson & Co. v. Partridge,* 636 F.2d 945, 963 (5th Cir.1981). That is the situation here. It is obvious where the jury went astray. It wanted to assess punitive damages against Christopher as well as Nova. But it did not want to award actual damages twice, since the damage done by Christopher and Nova, as in any case of derivative liability, was the same. So it assessed actual damages against only one party, Nova. This created the illogic of awarding punitive damages against a party against whom no award of actual damages had been made. But the fault was the district court's in directing the jury to assess actual damages separately for each defendant, a practice that we have disapproved, for example in *Douglass v. Hustler Magazine, Inc., supra,* 769 F.2d at 1146. The jury should be asked what the plaintiff's actual damages were, whether any of the defendants are liable for them, and whether it wishes to assess punitive damages, and in what amount, against any of the defendants found liable. The defendants in this case did not object to the incorrect form in which the jury was instructed, so cannot complain if the form hurt them, which we doubt.

The defendants raise two peripheral points. They complain that the district court awarded an excessive amount in attorney's fees and expenses against them for a violation of Fed.R.Civ.P. 11. They offer no particulars as to why the amount was excessive, so the complaint fails. And they argue that since Rice won on only two of his three counts and obtained a much smaller judgment than he originally had sought, the district court should not have awarded him his costs. In support of this argument the defendants cite a similar case, *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.,* 807 F.2d 91 (7th Cir.1986), but in which the dis-

trict court's denial of costs was upheld. They overlook the fact that the denial was upheld expressly as a permissible exercise of the district court's discretion in the award of costs. *Id.* at 94. They make no argument that the district court in this case abused its discretion in awarding costs. When an issue is governed by a deferential standard of review, such as abuse of discretion, the implication is that two district judges who reached the opposite result in identical cases might both be affirmed. The defendants have overlooked this elementary principle.

Their arguments about the amount of the sanction for their violation of Rule 11 and about the award of costs to the plaintiff fall far below professional standards of advocacy in this circuit. We do not tolerate blunderbuss appeals loaded with frivolous scattershot that wastes our time and appellees' money. The defendants are directed to show cause within fourteen days why they should not be sanctioned under Fed.R.App.P. 38 for presenting frivolous grounds of appeal. The judgment of the district court is

Affirmed.

WELLFORD, Circuit Judge, dissenting:

I would Reverse the judgment of the district court on several grounds; therefore, I respectfully dissent.

## I. PERSONAL JURISDICTION OVER CHRISTOPHER

Chief Judge Posner correctly sets out that in Illinois in this diversity case there is no personal jurisdiction "over an individual whose presence and activity in the state ... were solely on behalf of his employer or other principal." Plaintiff concedes in his brief that "if an individual's [Christopher's] only contacts with a forum are solely the result of acts as a corporate fiduciary, personal jurisdiction over the individual may not be grounded on such contacts." [1]

There is no question but that Christopher was in Illinois at all times pertinent to this case as a corporate officer with oversight

over plaintiff and that in all respects he purported to act on behalf of Nova. In my view, whether Christopher's disciplinary actions were "unfounded," as plaintiff claims, or whether, as a consequence, Nova "lost the services of a long-standing employee with an excellent service record," Rice was an "at will" employee subject to discharge by his authorized superior. As Judge Posner points out, "[t]he record contains no evidence that Christopher in firing Rice was on a frolic of his own." It was not alleged or shown that Christopher acted without the scope of his authority. Indeed, if that were the case, it is hard to see how Nova would be responsible for any interference with Rice's relationship or for defamation or for retaliatory discharge.

> Corporate officers are not outsiders intermeddling maliciously in the business affairs of the corporation. They are privileged to act on behalf of their corporations, using their business judgment and discretion. *Loewenthal Securities Co. v. White Paving Co.*, 351 Ill. 285, 300, 184 N.E. 310, 316 (1932). Since officers hold policy-making positions, "their freedom of action aimed toward corporate benefit should not be curtailed by fear of personal liability...."

*George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1333 (7th Cir.1983).

There is neither logic nor demonstrated basis in any assertion that Christopher's actions were "to further [his] personal goals." *Id.* Christopher was not alleged, or shown, to have any substantial financial stake in Nova so as to advance, in some fashion, his financial goals. The jury found that there was *no retaliation* against Rice by Christopher or by Nova. Such a finding by the jury is inconsistent with any claim of intentional interference with employment against Christopher. It should be noted that the only case cited by plaintiff in his brief to support the proposition that an allegation that a corporate officer acted contrary to the best interest of his employer is sufficient to overcome

---

1. Plaintiff concedes, with respect to the fiduciary-shield doctrine's applicability in Illinois, that "it is unfair to exercise personal jurisdiction over an individual whose only forum contacts involve acts in furtherance of corporate, rather than personal, interests."

a fiduciary-shield defense is *Zeman v. Lotus Heart, Inc.,* 717 F.Supp. 373 (D.Md.1989). That case turned on the individual officer's direct financial stake in the corporate employer.

> It would violate a sense of fairness to permit the Burrowses to solicit, negotiate, and consummate corporate business in Maryland in which they personally had so direct and substantial an interest and then allow them to avoid responding in Maryland to legal charges addressed to them personally, which arise from those transactions.

*Id.* at 378. *Zeman* sets out the following factors to consider in respect to the fiduciary-shield doctrine:

> Therefore, when (1) an employee has pursued conduct in a state solely at the direction of the corporation in furtherance of the corporation's interest; (2) he has not pursued a personal interest in the state that was direct and substantial; and (3) he has not diverted significantly from the corporate purpose and policies while in the state, his contact with the state should not subject him to the jurisdiction of a court in the state. . . .

*Id.* at 376–77.

The majority opinion, moreover, acknowledges that "Christopher probably *was* entitled, prima facie at least, to the protection of the fiduciary-shield doctrine because, so far as the record of the trial reveals, he was not in fact in Illinois to serve his personal interests." Since the doctrine is equitable, I would not only agree with the above language, but I would add that it would be unfair and destructive of such a doctrine to permit a plaintiff to overcome it by simply asserting, without any particularity, that Christopher was acting, in substance, contrary to the best interests of his employer. The law does indeed, moreover, require the plaintiff to prove, not merely assert, that a court has personal jurisdiction over a defendant.

I would hold that the district court erred in not applying the fiduciary shield doctrine and in accepting personal jurisdiction over Christopher. I would not find that Christopher ever waived this defense. But even if

personal jurisdiction were deemed appropriate for purposes of tortious interference with Rice's employment, I would find reversible error with respect to · other district court actions as to defendant Christopher.

## II. OTHER ERRORS AS TO DE-FENDANT CHRISTOPHER

Although the jury found in favor of Rice on his defamation and intentional interference claims, it awarded him zero damages. Unlike the district court, I would AFFIRM these jury verdicts. There is no contention by plaintiff but that the jury was properly instructed with respect to his claims of defamation and intentional interference. The majority acknowledges serious doubt that Rice actually suffered "pecuniary injury" or that he was "hurt in any very *palpable sense*" by defendants' actions in terminating him. The jury specifically found no compensatory damages proven against defendant Christopher, and I believe it was justified in reaching this verdict, inconsistent as it may have been, with respect to a finding of punitive damages against either defendant.

Illinois courts have held that "where actual damages are not recoverable, there can be no award for punitive damages." *Shrout v. McDonald's System, Inc.,* 90 Ill.App.2d 60, 234 N.E.2d 45 (1967), *cert. denied,* 393 U.S. 951, 89 S.Ct. 375, 21 L.Ed.2d 363 (1968). This is in conformity with general law on this subject. *See* 25 C.J.S. *Damages,* § 118 (1966). "The basic rule in Illinois is that punitive or exemplary damages may not be awarded in the absence of actual damages. . . . This rule has been followed consistently in Illinois." *Tonchen v. All–Steel Equip., Inc.,* 13 Ill.App.3d 454, 300 N.E.2d 616, 624 (1973).

> Furthermore,

> The courts of Illinois have repeatedly stated that punitive or exemplary damages are not a favorite of the law. *City of Chicago v. Shayne,* 46 Ill.App.2d 33, 196 N.E.2d 521 (1964); *Wetmore v. Ladies of Loretto,* 73 Ill.App.2d 454, 220 N.E.2d 491 (1966).

*Tonchen,* 300 N.E.2d at 624. Under Illinois law, then, as well as under Massachusetts law, there can be no recovery of punitive damages against Christopher even if person-

al jurisdiction over him existed. I would conclude that the magistrate judge was in error in granting plaintiff's motion to amend the judgment to hold Christopher jointly and severally liable for $10,000 in actual damages the jury awarded against Nova *only*.

I believe that a case cited by plaintiff actually lends support for this conclusion with respect to liability for damages:

> Illinois courts [have] determined that a jury verdict which simply found one codefendant negligent necessarily exculpated the remaining defendant, for the finding that the second defendant was not liable was "reasonably implicit" in the jury verdict. *Sesterhenn v. Saxe*, 88 Ill.App.2d 2, 232 N.E.2d 277 (1967).

*Musgrave v. Union Carbide Corp.*, 493 F.2d 224, 232 (7th Cir.1974).

For these reasons, I would conclude that there was lack of personal jurisdiction over Christopher, but if jurisdiction were found somehow appropriate, that plaintiff is entitled to no damages against Christopher under the jury verdicts and Illinois law. I have assumed as to damages that Illinois law applies; if Massachusetts law applies the result would be the same.

### III. LIABILITY OF NOVA

The claims against Nova are *essentially* liability by reason of respondeat superior for the alleged wrongful activity of its agent, Christopher, in retaliating against Rice by termination because Rice filed workman's compensation claims. The jury found, however, that there was *no retaliation* against Rice. The magistrate judge was correct in at least one respect in this case—denying Rice's motion for a new trial on the adverse verdict on the retaliatory discharge claim. ("The jury could have found that ... Christopher decided to fire Mr. Rice because of his dislike of him.") The magistrate judge is also correct in noting the jury's inconsistent verdict on the intentional interference claim, because "the claims have always been treated as inter-related." I disagree with the magistrate judge in her conclusion that as to defendant Nova, the verdicts can be reconciled. Nova cannot be held liable for intentional interference with a party (employee Rice)

with respect to its own contractual relationship.

There was simply no proof in this case that Nova defamed Rice, and the defamation claim was also inextricably intertwined with the claim of retaliation, which resulted in a verdict for defendants.

At the very best, Rice may be entitled to a new trial on the defamation claim since it is clear that this verdict is inconsistent with the retaliation verdict and the punitive damage award against Nova cannot stand. I am in agreement with Judge Posner that *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App.3d 966, 155 Ill.Dec. 493, 569 N.E.2d 1104 (1991), would indicate that it is "unlikely" that Illinois would adopt the "doctrine of compelled self-defamation." Absent such a doctrine, there is no evidence that Nova defamed Rice to any third party. I believe the better result as to Nova "in this poor excuse for a lawsuit," would be to REVERSE the judgments for damages against Nova under all the circumstances.

Accordingly, I would REVERSE the judgment of the district court as to both defendants.