Dr. Marlene A. STANFORD, Plaintiff,

v.

KRAFT FOODS, INC., a Delaware Corp., Debra Kaiser, Individually, Cynthia Jackson, Individually, and Christian Oleksiak, Individually, Defendants.

No. 99 C 1814.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 23, 1999.

James J. Bromberek, Russell John Heitz, Wyeth, Heitz & Bromberek, Naperville, IL, for plaintiff.

Timothy C. Klenk, Mary M. Moore, William J. Wortel, Ross & Hardies, P.C., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Plaintiff, Dr. Marlene Stanford, filed a five-count complaint against her former employer, Kraft Foods, alleging violations of the Age Discrimination in Employment Act and Title VII and adding pendant

state claims of tortious interference with contract, defamation per se, and breach of contract. Stanford brought the tortious interference and defamation claims against three individual employees of Kraft as well.

Stanford worked for Kraft—most recently in the company's Technology Division—from March 1986, until, presumably, March 5, 1998, when she received a "termination memorandum" from her immediate supervisor, defendant Debra Kaiser.[1] Stanford began working under Kaiser approximately one year before Stanford's departure from Kraft. According to Stanford, her problems began with the onset of Kaiser's supervision.

The thrust of Stanford's complaint is that the defendants conspired to get rid of her in order to hire and promote younger and male employees, a plan which they brought about by giving Stanford unfairly low and/or false performance reviews and probationary warnings, by reassigning her projects to younger employees, and by transferring her subordinates to other supervisors. Stanford additionally claims that many of the defendants' actions were not only discriminatory, but also violative of Kraft "policy and procedure" with regards to Stanford's employment.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants have moved to dismiss the tortious interference and defamation claims, and Kraft has additionally moved to dismiss the breach of contract claim. For the reasons stated herein, we grant in part and deny in part the motion to dismiss.

### Analysis

■ We first address Stanford's claim for breach of contract because its disposition impacts her claim for tortious interference. The defendants argue that Stanford

has failed to state a claim for breach of contract because she has not identified with specificity the contract on which her claim is based (and thus cannot state a claim for tortious interference with that contract), and because she has not "plead and prove(d) ... the existence of an offer, acceptance, consideration, performance by the plaintiff, and breach by the defendant causing a loss." (Defs. Mem. at 2, citing *Tibor Machine Products, Inc. v. Freudenberg–NOK General Partnership*, 967 F.Supp. 1006, 1010 (N.D.Ill.1997)). Second, defendants argue that to the extent Stanford has claimed breach of a written contract for severance pay, she has failed to allege the elimination of her job through no fault of her own, a condition precedent to her right to benefits under that contract.

Defendants' first argument confuses Illinois pleading requirements with those of the Federal Rules of Civil Procedure. Federal courts require that "a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" not detailed and specific facts as are required in Illinois state court. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), citing FED. R. CIV. P. 8(a)(2). Motions to dismiss under Rule 12(b)(6) are considered "merely to test the sufficiency of the complaint, not to decide the merits of the case." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). To survive a motion to dismiss, Stanford "need only allege—rather than prove—the existence of a valid contract." *Tibor*, 967 F.Supp. at 1011.

And while Stanford's complaint is by no means a model of clarity, it is possible to glean from it an allegation regarding the existence of a contract sufficient to survive

---

**1.** Although Stanford alleges that she received a so-called "termination memorandum," it is not clear from the language of the memo (attached as Exhibit E to the complaint) whether it served to discharge or merely discipline Stanford; the only additional fact she provides regarding her departure from Kraft

is complaint ¶ 10, which refers to events "subsequent to (plaintiff's) discharge." Apparently there is a dispute between the parties about whether Stanford resigned or was discharged but for the purposes of this motion, we must assume the truth of Stanford's complaint, that she was terminated from her position.

a motion to dismiss. Stanford alleges as part of her tortious interference claim, Count III, that "at all times prior to March 5, 1998, (the individual defendants) were aware that there existed legally enforceable contracts between (Stanford) and Kraft." Stanford's breach of contract claim, Count V, incorporates this earlier allegation, and thus succeeds (albeit barely) in alleging the existence of a valid contract and breach thereof. It is not necessary for Stanford to allege all the facts supporting her legal theory at this stage in the proceedings. *See Albiero v. City of Kankakee,* 122 F.3d 417, 419 (7th Cir.1997). Because it is possible that Stanford will be able to demonstrate the existence of such "legally enforceable contracts," we deny the motion to dismiss, *Id.* (holding motions to dismiss should be denied if the plaintiff could prove any set of fact consistent with the complaint). It will take only limited and pointed discovery to determine whether a valid contract exists, and if not, the matter may be disposed of on summary judgment.

Because Stanford's complaint states at least one claim for breach of contract, we do not need to consider the parties' other arguments regarding the validity of this count. However, we wish to clarify that Stanford's other contract claims are not viable. As defendants demonstrate, Stanford cannot maintain a breach of contract claim based on the severance contract she describes—which provides for severance payments if an employee's job is eliminated through no fault of his or her own— because Stanford alleges that Kraft sought a replacement for her after her discharge and then hired and promoted several younger scientists. Even accepting as true the existence of the severance contract and Kraft's failure to pay Stanford severance, her allegations regarding her discharge and replacement effectively "plead her out" of this claim;[2] she cannot maintain a claim for breach of the severance contract

if, by her own admission, the contract's terms do not apply to her situation. *See Early v. Bankers Life and Casualty Co.,* 959 F.2d 75, 79 (1992) (holding that a plaintiff can plead himself out of court by alleging facts that show he is not entitled to judgment).

Stanford also argues that her allegations that Kraft departed from its policies and procedures state a claim for breach of contract. In her response brief, she implies that these "policies and procedures" are akin to contractual promises made in some employee handbooks. However, in order for an employee handbook or other written policy statement to constitute a contract of employment, several elements must be present:

First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Doe v. First Nat'l Bank of Chicago,* 865 F.2d 864, 872 (7th Cir.1989), citing *Duldulao v. St. Mary of Nazareth Hosp. Center,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (1987).

Stanford neither identifies the source of the "policies and procedures" nor attaches them to her complaint; she provides only the most general contention that some of Kaiser's actions contradicted Kraft policy and procedure and were unprecedented. Even accepting as true Stanford's statements that Kaiser's actions violated Kraft policy and procedure, we cannot apply the *Duldulao* analysis since we have no copy of the policy to consider. *See First National Bank of Chicago,* 865 F.2d at 872–

---

**2.** In her response to defendants' motion, Stanford appears to recognize that she may not have a valid claim for severance under the contract she cited; she explains that there are several different severance contracts at Kraft, and without discovery, she cannot be certain which particular contract may be applicable to her.

873 (affirming dismissal of breach of contract claim where plaintiff did not attach policy manual containing alleged contractual language to her complaint); *see also Walton v. St. Anne's Hosp.*, No. 85 C 9393, 1987 WL 6871 (N.D.Ill. Feb.18, 1987) (dismissing breach of contract claim that was based on employer's unwritten policies).

■ Since we hold that Stanford has stated a viable claim for breach of contract, we turn to the question of whether she has adequately plead tortious interference with that contract. Stanford alleges that the individual defendants were aware of "legally enforceable contracts" between Stanford and Kraft, and that they interfered with these contracts through actions described above.

■ Generally speaking, a party cannot "interfere" with its own contract. *See Quist v. Bd. of Trustees of Community College Dist. No. 525*, 258 Ill.App.3d 814, 196 Ill.Dec. 262, 629 N.E.2d 807, 811–812 (1994). Included in the definition of "party" are a company's employees, officers, and directors through whom the company acts. These individuals are shielded from liability for tortious interference with the company's contracts unless they take actions contrary to the interests of the organization, thus waiving any conditional privilege they may have. *See Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir.1995); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913–914 (7th Cir.1994). In *Rice*, the Seventh Circuit found that the plaintiff adequately pled that his supervisor acted against the interests of their employer when the supervisor fired the plaintiff, and thus the plaintiff's complaint survived a motion to dismiss.[3] Because on appeal the Court was limited to reviewing the sufficiency of the allegations in the complaint, it could not consider the mitigating fact that the employer later demonstrated complicity with the supervisor by ratifying the supervisor's actions.

In this case, Stanford argues that she has adequately pled tortious interference by defendants Kaiser, Oleksiak and Jackson because she alleges that their actions were malicious, unjustified and deliberate. However, Stanford's prayer for relief in this count negates any inference that the individual defendants' actions were contrary to the interests of Kraft. Because Stanford requests damages jointly and severally from all of the defendants, including Kraft, we infer that the individual defendants acted in concert with Kraft. Thus, we grant the motion to dismiss Stanford's tortious interference claim.

■ Finally, the defendants move to dismiss Stanford's defamation claim on the ground that it was filed outside of the one-year statute of limitations period. Stanford's complaint alleges that in July 1997 Kaiser accused her of the criminal offense of deliberately omitting Oleksiak from a patent, and that Kaiser "published" this information to Kraft employees Peter Boyle and/or Burton Reiter as well as other individuals at Kraft without determining the truth of the information.

Although it appears from the exhibits Stanford attached to her complaint that publication to identified Kraft personnel occurred prior to September 8, 1997, and thus that her claim is untimely, Stanford's complaint also alleges that the statement was disseminated to other individuals at the company. Stanford does not identify either the dates of publication or the other individuals to whom the statement was published, but drawing all reasonable inferences in favor of Stanford, as we must when reviewing a motion to dismiss, *see Hi–Lite Prods. Co. v. American Home Prods. Corp.*, 11 F.3d 1402, 1405 (7th Cir. 1993), we conclude that Stanford states a claim for defamation because further publication within Kraft could have occurred within the limitations period.[4]

---

3. Although the motion to dismiss in *Rice* was based on lack of personal jurisdiction and not failure to state a claim, the analysis is nearly identical, namely, whether the alleged tortfeasor's actions were contrary to the interests of his or her employer.

4. The defendants urge us to adopt the so-called "discovery rule" to find that the statute

In her response brief, Stanford points to several other paragraphs in the complaint and claims that these paragraphs allege that defamatory statements were also published within the limitations period to the Illinois Department of Employment Security, the United States Patent Office and the United States Department of Immigration.[5] Even the most generous reading of the complaint does not allege publication to these agencies. Stanford merely alleges that after her termination, Kraft took actions contrary to her interests, such as contesting her request for unemployment, refusing to pay her a bonus, and promoting Oleksiak to her former position while informing the INS that Oleksiak was best qualified for the position. But because "a plaintiff may supplement the complaint with factual narration in an affidavit or brief," *Albiero*, 122 F.3d at 419, we will deem as true her brief's contention that such publication did occur and allow this allegation to stand. *See also Early*, 959 F.2d at 79.[6]

### Conclusion

For the foregoing reasons, we grant the motion to dismiss Stanford's tortious interference with contract claim (Count III) and deny the motions to dismiss her defamation and breach of contract claims (Counts IV and V). It is so ordered.

---

of limitations began running in July 1997 when Stanford discovered that the statement was first published. However, the discovery rule is actually used to extend the statute of limitations period beyond one year from the date of publication in cases where the plaintiff was not reasonably able to discover the statement until some time later because of the limited or private nature of the publication. *See Schweihs v. Burdick*, 96 F.3d 917, 920 (7th Cir.1996).

5. Our task is complicated by the fact that, in her brief, Stanford continually refers to "defamatory statements," although her complaint identifies only a single statement. For purposes of this motion, we assume that the "statements" to which she refers are limited to Kaiser's alleged publication that Stanford deliberately omitted Oleksiak's name from a patent.

6. We recognize the tension between *Albiero* and *Early* and the line of cases which follow *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir.1984), which holds that a plaintiff may not amend his or her complaint with a later brief. However, since we have accepted Stanford's defamation claim with regard to publications within Kraft, we will allow her to try to adduce evidence about timely publication to outside agencies without resolving the conflict between the two lines of cases.