UNITED STATES of America,
Plaintiff–Appellee,

v.

Gregory Bruce KIRN, Defendant,

Appeal of: Rose & de Jong,
S.C., Intervenor.

No. 02–3309.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 2003.

Decided Aug. 22, 2003.

Mel S. Johnson, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Victor E. Plantinga, Rose & de Jong, Brookfield, WI, for Intervenor–Appellant.

Before CUDAHY, MANION, and ROVNER, Circuit Judges.

### ORDER

Simply put, this case is a procedural muddle. The United States government prosecuted Gregory Kirn for bank fraud and won, and the court ordered Kirn to

pay restitution. Kirn and the government were the only parties in the district court. Yet this appeal has been brought by a third party, Rose & de Jong, a law firm that represented Kirn, not in the criminal case, but in a separate civil action. The district judge entered an order requiring the firm to pay the U.S. Attorney the sum of $50,000, but we are uncertain what authority, if any, the judge had for doing so. Rose & de Jong appeals from this order, designating itself as "appellant-intervenor," even though the firm apparently never formally intervened. What is clear is that numerous questions, both jurisdictional and factual, remain unanswered in this case. Thus we vacate the order requiring Rose & de Jong to surrender the $50,000 and remand for further proceedings.

## I.  Background

Rose & de Jong represented Kirn in a civil suit against his former employer, Hockey Haven, Inc., and its principal owners. According to the firm, a retainer letter setting forth the terms and conditions of representation was forwarded to Kirn in March 1999. But neither this letter nor any other documentation of a fee agreement between the firm and Kirn has been made part of the record.

Rose & de Jong filed suit on Kirn's behalf in Wisconsin state court in September 1999. Eventually the parties reached an agreement that Hockey Haven would pay Kirn $50,000. The $50,000 was deposited into a trust account administered by Rose & de Jong. Shortly thereafter, Rose & De Jong deducted $21,216.35 from the account to cover unpaid attorneys fees incurred by Kirn and paid out an additional $5000 in expert witness fees. The remainder of the settlement proceeds was to remain in trust pending Kirn's instructions.

Unbeknownst to Rose & de Jong, when Kirn filed suit against Hockey Haven, he had already been convicted of committing bank fraud and ordered to pay restitution to the victim, CUMIS Insurance Company, in the amount of $294,562.67. By the time Kirn and Hockey Haven reached their settlement agreement in October 2001, Kirn had pleaded guilty to a second charge of bank fraud and was awaiting sentencing. On November 2, 2001, the judge presiding over Kirn's second bank fraud case issued an order freezing any settlement proceeds from the Hockey Haven litigation so that the funds could be applied towards restitution in both criminal cases. Subsequently, on December 5, 2001, Kirn was convicted of committing fraud against Firstar Bank Corporate Security and ordered to pay restitution in the amount of $206,963.34.

Apparently, Rose & de Jong did not learn that criminal charges were pending against Kirn until the fall of 2001, when an attorney representing Hockey Haven told them so at a settlement conference. In addition, the firm never received a copy of the district court's order of November 2, 2001 freezing the Hockey Haven proceeds. In fact the firm did not receive notice of the order until January 17, 2002, when an attorney for Firstar Bank sent the firm a copy of a letter addressed to the district judge that made reference to the order. By January 17, Hockey Haven had already forwarded the $50,000 settlement payment to Rose & de Jong, and attorney's fees and costs had already been disbursed, leaving a balance of $23,783.65. The district court, however, subsequently issued an order directing that the entirety of the $50,000 be turned over for restitution and divided equally between CUMIS and Firstar.

Rose & de Jong wrote a letter questioning the district court's authority to order the firm to turn over the entire $50,000. The firm asserted that Wisconsin's attorney's lien statute, Wis. Stat. § 757.36, entitled it to compensation from the $50,000

for the legal services it had provided Kirn. In response, CUMIS, Firstar, and the U.S. Attorney's Office submitted letters to the court objecting to the firm's retention of any portion of the settlement proceeds. Rose & de Jong wrote a second, more detailed letter, arguing, in part, that the court lacked the jurisdiction necessary to compel the firm to disgorge the funds.

The district court treated the correspondence from Rose & de Jong as a motion for reconsideration and denied it, finding that, under 31 U.S.C. § 3713(b), the government, which was collecting restitution payments on behalf of CUMIS and Firstar, had a claim to the $50,000 that was superior to the attorney's lien asserted by the firm. Without formally intervening or being joined as a party, Rose & de Jong filed a petition for an evidentiary hearing to determine the ownership of the $21,216.35 that it had deducted from the settlement fund to cover Kirn's unpaid legal fees. The court denied the firm's request for an evidentiary hearing, and the firm subsequently filed a notice of appeal.

## II. Analysis

At the very beginning of our analysis, we encounter difficulty in determining Rose & de Jong's status in the district court proceedings and the basis of its standing to appeal. Rose & de Jong was not a party to the bank fraud case against Kirn, and it never formally intervened. The firm has conducted this appeal as though it actually did intervene because, presumably, it would have no standing to appeal otherwise. Sometimes, the absence of a formal intervention can be overlooked, and it is arguably possible to infer that Rose & de Jong wished to intervene when it filed its petition for an evidentiary hearing and that the court considered the firm a party when it issued an order in response to the firm's letters. *See, e.g.,*

*United States v. Griffin,* 782 F.2d 1393, 1399 (7th Cir.1986) ("The City's motion was not styled one for intervention, but a court is entitled to disregard labels and treat pleadings for what they are."); *American Nat'l Bank and Trust Co. of Chicago v. Bailey,* 750 F.2d 577, 582 (7th Cir.1984) ("Chicago Investment's failure to file a formal motion for leave to intervene ... would not necessarily be fatal to its status as an intervenor."); *Farina v. Mission Investment Trust,* 615 F.2d 1068, 1075 (5th Cir.1980) ("Although FDIC did not formally file a motion to intervene, ... it was within the discretion of the District Court to treat the motion to remove as also a motion to intervene, both of which were granted by the Court in its obvious acceptance of FDIC as a party in the suit.").

However, there must be a procedure for the United States to follow when it believes a third party is holding funds for the defendant, and the one followed here was inadequate. What was needed was a procedural step or steps at which the government formally initiated proceedings against Rose & de Jong so that the ownership of the $50,000 could be definitively determined. For example, the government could have considered joining Rose & de Jong as a party or naming the firm as a nominal defendant. *See, e.g., SEC v. Cherif,* 933 F.2d 403, 414 (7th Cir.1991) (SEC could possibly recover funds from a third party by naming him as either a nominal or "full" defendant). Ultimately, the record does not clarify how the court could exercise jurisdiction over funds in the possession of Rose & de Jong when the firm had not formally intervened and had not otherwise been made a party to the criminal proceedings. *See id.* at 413–14 (court presiding over securities fraud case had no authority to freeze the assets of a non-party against whom no

wrong-doing was alleged until it established that the assets were proceeds from securities laws violations).

The district court failed to address the jurisdictional issue raised by Rose & de Jong in its correspondence with the court. Rose & de Jong essentially argued that, because it was not a party to the criminal proceedings, the court lacked personal jurisdiction and did not have the authority to enter orders against the firm. The order that the court issued in response to Rose & de Jong's letters acknowledges that its directive that the entire $50,000 be turned over "was directed to Kirn personally in a separate criminal proceeding to which the Rose law firm was not counsel or a party. The Rose law firm was never served and is not subject to the jurisdiction of the Court." (District Court's Order of June 7, 2003, at 2). The court, however, never explained the basis of its authority to order the surrender of funds in the possession of Rose & de Jong in the absence of personal jurisdiction over the firm.

■ The government argues that Rose & de Jong has waived any objection to the court's personal jurisdiction on appeal by not objecting in district court. The government concedes that Rose & de Jong raised the issue of personal jurisdiction in its second letter to the court. But it argues that the objection voiced in the second letter came too late. The government observes that a party to a civil action waives the defense of lack of personal jurisdiction by not raising it in an initial motion to dismiss or a responsive pleading, Fed. R. of Civ. P. 12(h)(1), and that defects in the institution of a criminal case, including lack of personal jurisdiction, must be raised by motion prior to trial, Fed. R. of Crim. P. 12(b)(1). According to the government, Rose & de Jong waived its jurisdictional objection by not raising it when it asked the court for relief in its first letter,

which constituted the firm's responsive pleading. We cannot accept the government's reasoning. At the time Rose & de Jong first wrote to the district judge, the firm knew of the court's order only because it had been copied on Firstar's correspondence with the court. Surely, a carbon copy of a letter was insufficient to alert Rose & de Jong to the possibility that its own letter to the court would be treated as a responsive pleading. It would be harsh, to say the least, to conclude that, in a case to which it was not even a party, Rose & de Jong could waive a jurisdictional challenge by failing to mention it in an unsolicited letter to the district judge.

The government further relies on *Rice v. Nova Biomedical Corp.*, 38 F.3d 909 (7th Cir.1994), to argue that Rose & de Jong also waived the objection by failing to pursue the jurisdictional issue in its petition for an evidentiary hearing. But *Rice* involved a defendant who waited until after a trial to revive an objection that he had raised half-heartedly at the outset of the action. 38 F.3d at 914. Unlike *Rice* this is not a case where a party conveyed the impression that it had abandoned a defense based on personal jurisdiction only to raise it again on appeal from an adverse judgment. *See id.* There was no protracted litigation in the district court over the issues Rose & de Jong raises in this appeal; the firm merely wrote a couple of letters and filed a petition for an evidentiary hearing which was denied. The government cannot have been under the impression that the firm abandoned its jurisdictional objection; in its letters and its petition for an evidentiary hearing, Rose & de Jong repeatedly protested that its non-party status precluded the court from forcing it to surrender the entire $50,000. We do not see what more the firm could have done to "pursue" its objection.

The government argues that the court did not need personal jurisdiction over the firm to require it to relinquish the entire $50,000 because the court did have personal jurisdiction over Kirn. But the court's jurisdiction over Kirn gives it the authority to direct the disposition of the funds only if the funds belong to Kirn, and Rose & de Jong claims that $ 21,216.35 of the funds belong to the firm, not to Kirn. Ownership of the funds must be ascertained before the scope of the court's jurisdiction can be determined. We conclude that the record in this case is insufficient to establish who owned the $50,000 that was deposited into the Rose & de Jong's trust account after Kirn reached the settlement agreement with Hockey Haven.

The panel had many questions about the factual background of this case that were not answered by the record or by the parties at oral argument. The record lacks certain information that would be helpful, if not essential, in resolving the legal issues involved in this dispute. For instance, the record does not include the written retainer agreement between Rose & de Jong and Kirn or any other documentation of exactly when, and under what terms, Rose & de Jong agreed to represent Kirn. Further the record does not verify exactly when Kirn and Hockey Haven reached their settlement agreement or when the settlement proceeds were disbursed. Nor does the record make entirely clear the nature of the government's claim to the settlement proceeds. At oral argument, the government asserted that it filed a lien following Kirn's first conviction for bank fraud and that the lien attached to Kirn's real property. But there is no documentation of this lien in the record, and it is unclear whether this lien, or any other lien the government may have filed, is applicable to the $50,000 at issue here. An evidentiary hearing would be helpful in addressing these and other factual uncertainties in this case.

Moreover, the parties here have presented arguments based on a variety of statutes and legal doctrines, and the legal issues in this case are far from clear-cut. We think some of these issues deserve more attention than they received in the district court. For instance, we are concerned that Rose & de Jong's equitable interest in the settlement proceeds not be overlooked. According to the government Rose & de Jong is simply Kirn's creditor and its legal representation of Kirn does not entitle it to any interest in the $50,000 superior to that of any other creditor. But much of the controversy in this case arises from the fact that Rose & de Jong is *not* a run-of-the-mill creditor. The firm is not merely a lender or a service provider seeking payment from a $50,000 fund that a debtor happens to have at his disposal. Rose & de Jong's work actually created the funds at issue in this case. If Rose & de Jong had not performed legal services for Kirn, there would be no settlement proceeds at all, and no portion of the $50,000 would be available to the victims of Kirn's fraud.

Ultimately, CUMIS and Firstar benefitted from Rose & de Jong's legal services because the firm enabled Kirn to apply to the restitution orders $ 23,783.65 that he would not have had but for the firm's work in the Hockey Haven case. Thus it seems to be in the best interests of all those involved that law firms like Rose & de Jong have an incentive to represent clients like Kirn in civil proceedings. When Kirn first retained Rose & de Jong, the firm did not know that an order would be issued directing it to relinquish the proceeds of any settlement it negotiated on Kirn's behalf. Had the firm expected the court to issue such an order, which for all practical purposes would bar the firm from being

compensated, it might have decided not to represent Kirn in the first place.

The government argues that it is not equitable for Rose & de Jong to get the whole of its fees while the victims of Kirn's fraud receive only a portion of the amount owed them. But it is Kirn, not Rose & de Jong, that has been ordered to pay restitution. Should Rose & de Jong be forced to disgorge the amounts paid out, then Kirn would owe that much less to CUMIS and Firstar. In effect, Kirn's liability to his victims would be reduced at the firm's expense. We are not certain that requiring the firm to pay the entire $50,000 would lead to a result less equitable than would allowing the firm to compensate itself from the fund. On remand, the district court should consider the equitable interests pertinent to this case. The court may find, for instance, that the common fund doctrine supports Rose & de Jong's position that they should be allowed to retain part of the settlement proceeds. *See, e.g., Admin. Comm. of Wal–Mart Stores, Inc.,* 338 F.3d 680, 688–89 (7th Cir.2003); *Florin v. Nationsbank of Ga.,* 34 F.3d 560, 563 (7th Cir.1994); *Wis. Retired Teachers Ass'n v. Employee Trust Funds Bd.,* 195 Wis.2d 1001, 537 N.W.2d 400, 416–17 (1995).

We do not suggest, however, that these equitable considerations necessarily allow Rose & de Jong to retain the $21,216.35 that it deducted from the settlement proceeds; other legal authority may be applicable as well. The government argues that Rose & de Jong is obligated to surrender the entire $50,000 under 31 U.S.C. § 3713(b), which establishes the priority of government claims when a debtor is insolvent and provides that, "A representative of a person or an estate ... paying any part of a debt of the person or estate before paying a claim of the government is liable to the extent of the payment for unpaid claims of the government." Rose & de Jong counters that § 3713 does not apply in a case like this, where the government is collecting debts on behalf of private third parties. The firm argues that it had an attorney's lien on the settlement proceeds under Wis. Stat. § 757.36 and that this lien takes priority over the government's claim.

After reviewing the briefs and the record, we conclude that the record has not been sufficiently developed for us to determine how these various legal authorities should be applied in this case. If the government is able to establish some basis for jurisdiction over Rose & de Jong, the district court will be better situated to conduct this analysis after holding an evidentiary hearing to resolve the questions surrounding the ownership of the Hockey Haven settlement proceeds. Accordingly, we VACATE the district court's order against Rose & de Jong and REMAND for proceedings consistent with this opinion.